Edward F. NEIDHART, Appellant,

v.

NEIDHART S.A. et al.

The GEORGE HYMAN CONSTRUCTION COMPANY, Appellant,

v.

SPIROLL CORPORATION, LTD.

Nos. 72–1792, 73–1181.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1974.

Decided Jan. 10, 1975.

Rehearing Denied Feb. 18, 1975.

Thomas F. McWilliams, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court for appellant in 72–1792. Edward F. McKie, Jr., and Neal E. Abrams, Washington, D.C., entered an appearance for appellant in 72–1792.

Saul Jecies, New York City, for appellee in 72–1792.

Daniel C. Kaufman, Washington, D.C., with whom Jack L. Lahr, Washington, D.C., was on the brief for appellant in No. 73–1181.

Allan J. Topol, Washington, D.C., with whom Herbert Dym, Washington, D.C., was on the brief, for appellee in 73–1181.

Before TAMM and LEVENTHAL, Circuit Judges, and GEORGE L. HART, Jr.,* United States District Judge for the District of Columbia.

TAMM, Circuit Judge:

The sole question before us in these cases is whether the procedures authorized by section 293 of the Patent Codification Act, 35 U.S.C. §§ 1 et seq. (1970), are available to plaintiffs-appellants to effect service of process on the opposing parties. Answering this question in the negative, we affirm.

In Neidhart v. Neidhart, S.A., No. 72–1792, plaintiff-appellant Edward Neidhart, an American citizen residing in Illinois, filed suit in district court for the District of Columbia against defendants-appellees Neidhart, S.A., a Swiss corporation believed to own legal title to certain United States patents, and against Maria and Rico Neidhart, Swiss citizens and residents believed to be respectively sole owner and Chief Managing Officer of Neidhart S.A.[1] Appellant's complaint alleges that Neidhart S.A. breached a sublicensing agreement which granted him the exclusive right to award sublicenses under the patents in question. Appellant sought a judgment declaring the validity of the sublicensing agreement and a modification thereof, and establishing that he is entitled to receive royalties due. Appellant also requested that the court permanently enjoin Neidhart S.A. from interfering and harassing him in the exercise of his sublicense rights.

In George Hyman Construction Co. v. Spiroll Corp., Ltd., No. 73–1181, plaintiff-appellant George Hyman Construction Co. ("Hyman"), a Maryland corporation, filed suit in district court for the District of Columbia against Spiroll Corp., Ltd. ("Spiroll"), a Canadian corporation owning certain United States patents. The complaint, as that in Neidhart, alleges that Spiroll breached an agreement which granted Hyman an exclusive territorial use license of the Spiroll patents. Hyman sought a judgment declaring the existence and validity of the license, an order directing Spiroll's specific performance, preliminary and permanent injunctions restraining Spiroll from granting conflicting licenses, and monetary damages.

Both plaintiffs-appellants attempted service of process pursuant to 35 U.S.C. § 293. In Neidhart, District Court Judge Flannery granted summary judgment in favor of Neidhart S.A., dismissing the summons and complaint with prejudice on the ground that the action is not "related to the validity or infringement of patents but rather an action involving an alleged breach of a sublicensing agreement . . . ." Consequently, he held section 293 "ineffective to validate the attempted service of process . . . ." Neidhart v. Neidhart, S.A., Civil No. 2240–71, Order filed June 15, 1972 (D.D.C.). In Hyman, District Court Judge Waddy quashed section 293 service of process as ineffective because "plaintiff seeks to enforce ordi-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Hereafter Neidhart S.A., Maria Neidhart and Rico Neidhart are collectively referred to as "Neidhart S.A."

nary contract rights and not rights affecting the patent or rights arising under the patent . . . ." George Hyman Construction Co. v. Spiroll Corp., Ltd., Civil No. 1848–72, Order filed Dec. 7, 1972 (D.D.C.).

Thus, these cases involve the Patent Codification Act, 35 U.S.C. §§ 1 et seq. (1970), enacted in 1952 as the culmination of extensive efforts to revise the patent laws. Section 293 of the Act, providing for service and notice to non-resident patentees, reads:

> Every patentee not residing in the United States may file in the Patent Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights ·thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (1970). Hence, the issue in the cases *sub judice* is whether actions to determine license rights are "proceedings affecting the patent or rights thereunder." For reasons discussed below, we think not.

The legislative history provides some insight into the problems Congress

sought to remedy through section 293. During extensive hearings on the proposed bill, the Department of State noted that section 293 (introduced as section 252)

has been added for the benefit of American residents desiring to bring action against foreign owners of United States patents. At the present time, *American manufacturers threatened by charges of infringement* of United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment.[2]

Testimony by the Chief of the Patent Litigation Unit of the Department of Justice was practically identical to this statement.[3] The only other reference to section 293 in the hearings is a report by the Patent Law Committee of the Bar Association of the City of New York which offered the following addition to the section:

> Acceptance of the grant of a patent hereafter shall constitute an irrevocable consent to be sued as provided in this section and appointment of the Commissioner of Patents as agent of the patentee to receive service of process under this section.

1951 Hearings 222. The suggestion was not incorporated into the bill. The House Report[4] and the Senate Report[5] characterize section 293 as being part of "a group of sections relating to *remedy for infringement of a patent* . . . ."[6] Both reports then note that

---

2. Hearings on H.R. 3760 Before the Subcomm. No. 3 of the House Comm. on the Judiciary, 82d Cong., 1st Sess., ser. 9, at 91 (1951) (emphasis added) [hereafter cited as 1951 Hearings].

3. 1951 Hearings 98.

4. House Comm. on the Judiciary, Revision of Title 35, United States Code, H.R.Rep.No. 1923, 82d Cong., 2d Sess. 10, 31 (1952) [hereafter cited as H.R.Rep.No.1923].

5. Senate Comm. on the Judiciary, Revision of Title 35, United States Code, S.Rep.No.1979,

82d Cong., 2d Sess. 9, 31 (1952) [hereafter cited as S.Rep.No.1979], U.S.Code Cong. & Admin.News 1952, p. 2394.

6. H.R.Rep.No.1923 at 10; S.Rep.No.1979 at 8 (emphasis added). Our dissenting colleague takes issue with this interpretation. We think that the language speaks for itself. The above-quoted phrase in its entire context reads:

> Beginning with 281 is a group of sections relating to remedy for infringement of a patent, the suit in the courts. The present statutes on this matter are in confusion

"[s]ection 293 is a new section that is needed on some occasions to obtain jurisdiction over foreign patent owners that do not reside in the United States."[7]

In light of the hearings and the Congressional characterization in the reports, it is clear that "occasions" specifically refers to suits concerning the validity or infringement of patents. The least that may be adduced from the legislative history is that Congress most assuredly did not contemplate application of section 293 to actions to determine license rights. Moreover, one commentator, well acquainted with the intricacies of the Act, opined that section 293 "will enable, for example, jurisdiction over a patentee residing in a foreign country to be obtained in a declaratory judgment action *involving the validity or infringement* of the patent."[8] Again, controversies concerning license rights are notably absent from the examples cited.

Our interpretation of the scope of section 293 finds abundant support in case law. Since its enactment, section 293 has been primarily invoked in cases where plaintiffs sought declaratory judgments involving patent validity or infringement. *See* Abington Textile Machinery Works v. Carding Specialists (Canada), Ltd., 249 F.Supp. 823 (D.D.C. 1965); Scandia House Enterprises, Inc. v. Dam Things Establishment, 243 F.Supp. 450 (D.D.C.1965); Sealol Corporation v. Flexibox, Ltd., 242 F.Supp. 693 (D.D.C. 1965). *See also* Etablissements Henry-Le Paute v. American Greiner Electronics, Inc., 172 F.Supp. 228 (D.Conn.1959); Webster-Chicago Corp. v. Holstensson, 132 F.Supp. 287 (D.D.C.1955). In these cases, the applicability of section 293 was manifest, thus obviating the necessity for detailed analysis of the scope of "proceedings affecting the patent or rights thereunder." Only one reported case has made such an analysis. North Branch Products, Inc. v. Fisher, 179 F.Supp. 843 (D.D.C.), rev'd on other grounds, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), cert. denied, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961).

In *North Branch*, an action for a declaratory judgment concerning title to patents, the court held that

because they were written quite some time ago and court procedure and the names of actions and so on have changed since then. So the present sections were substantially reorganized into a group of sections fitting in at this place, with some changes.

Section 281 is a declaration which serves as a preamble to the others.

Section 282 introduces a declaration of the presumption of validity of a patent, which is now a statement made by courts in decisions, but has had no expression in the statute. The defenses to a suit for infringement are stated in general terms, changing the language in the present statute, but not materially changing the substance.

The next few sections relate to injunctions, damages, attorney fees, the statute of limitations, and to marking and notice; all of which together replace present statutes on suits, with a good deal of reorganization in language to clarify the statement of the statutes.

Section 288 is the companion section to the disclaimer section, 253.

Section 292 is a criminal statute relating to falsely marking an article as being patented when it was not patented, which is now the present law. But this section revises it and makes a few changes, and also makes it an ordinary criminal action as well as an informer action as in the present statute.

Section 293 is a new section that is needed on some occasions to obtain jurisdiction over foreign patent owners that do not reside in the United States.

H.R.Rep.No.1923 at 10; S.Rep.No.1979 at 8–9, U.S.Code Cong. & Admin.News, 1952, p. 2402. While we discern a color of support in this language for the dissent's interpretation, we cannot agree that it "plainly" excludes section 293. The dissent states that "the group of sections dealing with court suits for infringement plainly stops before section 292. . . . ." Of course, the dissent does not reconcile this interpretation with directly contradictory views expressed at the hearings by the Department of State, *supra*, note 2, and the Chief of the Patent Litigation Unit of the Department of Justice, *supra*, note 3. Moreover, the dissent's interpretation ignores the entire thrust of chapter 29—"remedies for infringement of patent, and other actions."

7. H.R.Rep.No.1923 at 10; S.Rep.No.1979 at 9, U.S.Code Cong. & Admin.News 1952, p. 2403.

8. Federico, Commentary on the New Patent Act, 35 U.S.C.A. at 58 (1954) (emphasis added).

the phrase "proceedings affecting the patent or rights thereunder" . . . should be construed as synonymous with "actions under the patent laws of the United States" [see 28 U.S.C. § 1338(a)] and, therefore, should be limited and restricted to actions for infringement of patents and actions for declaratory judgments to adjudicate the validity or infringement of patents. Since the case at bar is not within this group, Section 293 does not apply to it and hence service by publication under that Section was ineffective.

*Id.* at 845–846. The court's rationale was twofold:

■ that the Section is included in the codification of laws relating to patents would seem to lead to the conclusion that the Section should be construed as being limited to actions under the patent laws, rather than extended to all actions affecting patents generally . . . [and 2] that otherwise a constitutional question would arise. . . . [i. e.] a possible lack of any constitutional basis for jurisdiction either over the subject matter or over the person.

*Id.* at 845. While we agree with the rationale of *North Branch,* we would not go so far as to say that 28 U.S.C. § 1338(a) and 35 U.S.C. § 293 are synonymous. The language of each is distinctly different, and Congress may well have intended each to encompass different situations. Nevertheless, absent a more definitive indication of Congressional intent, we cannot hold that license agreement controversies are among the situations embraced by section 293.[9]

In addition to the *North Branch* rationale, traditional concepts of federal jurisdiction in cases involving patents support our conclusion. It is, of course, well settled that not all cases somehow involving patents are within the domain of federal courts. *See, e. g.,* Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); Wilson v. Sanford, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1850). However, amicus curiae, Department of Justice, asserts that "proceedings affecting the patent or rights thereunder" means "any matter affecting a patent or rights thereunder, whether the claim falls within the jurisdiction of the state courts or the federal courts." Amicus curiae's Br. at 13. Amicus curiae then concludes that Congress, through section 293, "has combined a grant of subject matter jurisdiction which springs into operation if the patentee cannot be sued elsewhere, with a long-arm statute conferring personal jurisdiction over nonresident patentees who fail to designate an agent for service of process." *Id.* at 14–15. We cannot agree with this analysis. We find no indication whatsoever that Congress intended to abrogate the traditional separation of state court-federal court jurisdiction whenever a nonresident patentee is involved.

■ The instant cases, while termed patent license agreement controversies, are, quite simply, contract disputes. *See* 4 Walker on Patents §§ 380, 420 (Deller ed. 1965). The rights of the parties derive solely from the terms of their contracts. Appellants plainly have no rights under the patents; their rights, if any, are only those emanating from the "four corners" of their respective agreements.

---

**9.** The dissent states that "The natural meaning of the words used ["affecting the patent or rights thereunder"] conveys, to me, the thought that a proceeding to determine, e. g., the extent of rights granted by an exclusive license granted by the patentee, or the validity of the license, is a 'proceeding affecting rights under the patent.'" We are constrained to respond that frequently the "natural meaning" of statutory language is belied by the traditional jurisprudential foundations of a particular area of the law. This is espe-

cially true in the field of patent law, which seems to have a propensity for enigmatic aberrations. When enacted, who could have envisioned the countless years of interpretation by practitioners and jurists alike that was, and undoubtedly will continue to be, engendered by the simple phrase "arising under the patent laws"? "Natural meaning" simply will not suffice where, as here, other considerations necessitate more sophisticated interpretation.

We see no reason to bring such matters within the realm of the federal judiciary nor do we think Congress intended such a result.[10]

█ In sum, we hold that where plaintiffs seek merely to resolve the existence, *vel non*, of patent license agreements and their rights thereunder, section 293 is not available to effectuate service of process on nonresident patentees.

Affirmed.

LEVENTHAL, Circuit Judge (dissenting):

In my view, the special long arm jurisdiction provided by § 293 of the Patent Codification Act of 1952, 35 U.S.C. § 293 (1970),[1] is applicable in an action against a foreigner holding a United States patent, for breach of an exclusive licensing agreement. This personal jurisdiction is meaningful, of course, only if the District Court has subject-matter jurisdiction under other statutes, as it does here in view of allegations of diversity of citizenship and $10,000 amount in controversy.

1. Generally, of course, a suit about a patent license is not a suit "arising under any Act of Congress relating to patents" within the meaning of 28 U.S.C. § 1338(a) (1970). Therefore, Federal courts generally do not have subject matter jurisdiction over such actions.

However, 35 U.S.C. § 293 (1970) is a quite different statute. Its first sentence provides that a foreign patentee may designate an agent for service of process or notice of "proceedings affecting the patent or rights thereunder." If the foreign patentee does not designate an agent, the District Court for the District of Columbia "shall have jurisdiction and summons shall be served by publication or otherwise as the court directs." The third sentence reads: "The court shall have the same jurisdiction to take any action respecting the patent *or rights thereunder* that it would have if the patentee were personally within the jurisdiction of the court" (emphasis added).

In sum, § 293 gives the District Court jurisdiction over the person of the foreign patentee, limited to "proceedings affecting the patent or rights thereunder." It was intended as a "long arm statute,"[2] which operates, in the standard mold of long arm statutes, to permit the court to act as if the absent defendant had been directly served with respect to those matters on which he had initiated contacts with the jurisdiction.[3]

In the *North Branch* case[4] Judge Holtzoff stated that 35 U.S.C. § 293 (1970) should be interpreted in the same way as 28 U.S.C. § 1338(a) (1970). Judge Holtzoff's opinion is confused, I think, by his concern that there was no

---

**10.** Appellant Neidhart and amicus curiae cite several district court cases in which section 293 was invoked by the United States for jurisdiction over foreign corporations in antitrust actions involving patents—the district courts denied motions to dismiss. Appellant Neidhart's Br. at 7–10; amicus curiae's Br. at 8. We have examined those cases and do not find them applicable here.

**1.** Section 293 provides:

Every patentee not residing in the United States may file in the Patent Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has

been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

**2.** Japan Gas Lighter Ass'n. v. Ronson Corp., 257 F.Supp. 219, 228 (D.N.J.1966).

**3.** International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**4.** North Branch Products, Inc. v. Fisher, 179 F.Supp. 843 (D.D.C.), rev'd on other grounds, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), cert. denied, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961).

subject-matter jurisdiction in the case, as appears from his notation that the case lacked the allegations necessary for diversity of citizenship jurisdiction.[5] He seems not to have focused on what was then part of the District Court's subject-matter jurisdiction, the common law and equity jurisdiction of the general trial court in the District of Columbia. (*See* note 11 *infra*). And so he did not study the case in the light of the particular characteristics of § 293 as a provision granting personal jurisdiction, as distinguished from subject-matter jurisdiction.

But, even without regard to that, I fail to see why the language of 35 U.S.C. § 293 (1970) should be construed in the same way as the distinctly different language of 28 U.S.C. § 1338 (1970). We must consider the long history of § 1338, the dozens of cases decided under it, the nice distinctions drawn and the care taken to narrow the content of the phrase because it entailed an *exclusive* grant of subject matter jurisdiction to the Federal courts and a corresponding removal from the state courts.[6] None of this applies to § 293, which is intended to supply a remedy that would not otherwise be available in either state or Federal courts. The selection for 35 U.S.C. § 293 (1970) of language different from that in 28 U.S.C. § 1338 (1970), a historic section well known to the patent fraternity, can hardly be deemed inadvertent.

As to legislative purpose, § 293 was intended to cope with the problem that nonresidents could obtain valuable United States patent rights, and yet stay beyond the reach of both state and Federal process as long as they were not present or "doing business" within the United States. Congress sought to assure Americans a forum in the United States for proceedings "affecting the patent or rights thereunder." The phrasing is in the disjunctive—including not only proceedings affecting the patent but proceedings affecting rights under the patent. The natural meaning of the words used conveys, to me, the thought that a proceeding to determine, *e. g.,* the extent of rights granted by an exclusive license granted by the patentee, or the validity of the license, is a "proceeding affecting rights under the patent."

The legislative history is not explicit—if it were, presumably we would not have a case for decision—but such as it is, it seems to me to support my view. There were no hearings in the Senate. The hearings in the House present the comments of the State Department on what was then § 252 of the bill, and became § 293 of Title 35. The Department of State commented in a letter:

> 4. *Section 252, "Service and notice; nonresident patentee."*—This section provides that a nonresident patentee may designate by notice to the Patent Office a person within the United States on whom process or notice may be served and that in lieu of such designation such notice or process may be served upon the Commissioner. The Department understands that this provision has been added for the benefit of American residents desiring to bring action against foreign owners of United States patents. At the present time American manufacturers threatened by charges of infringement of United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment. Most foreign countries in their patent laws require foreign owners of patents issued by them to have resident agents upon whom service may be made.[7]

The last three sentences were echoed in the testimony of a Department of Justice spokesman.[8]

---

5. 179 F.Supp. at 845.

6. *See* Note on Federal and State Court Jurisdiction in Patent Matters, in Bator, Mishkin, Shapiro & Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 874–79 (2d ed. 1973).

7. Patent Law Codification and Revision, Hearings Before the House Judiciary Committee on H.R. 3760, 82nd Cong., 1st Sess., at 91.

8. *Id.* at 93.

Here we have the nub of it. The provision is broadly described as "for the benefit of American residents desiring to bring action against foreign owners of United States patents." American manufacturers threatened with charges of infringement are identified as being "especially handicapped" by present lack of service capability, but they were not the sole beneficiaries of the legislation.

The House and Senate Reports say only this about § 293: "Section 293 is a new section that is needed on some occasions to obtain jurisdiction over foreign patent owners that do not reside in the United States."[9] What occasions are "some occasions"? The Committee Reports do not say. We have to go back to the language of the statute and any other indications of legislative intent.

I take issue with the majority opinion in its statement that the House and Senate Reports describe Section 293 as "part of 'a group of sections relating to *remedy for infringement.*'" These words appear in those Reports in this sentence: "Beginning with 281 is a group of sections relating to remedy for infringement of a patent, the suit in the courts."[10] That "group of sections" is sections 281 through 287, inclusive, which relate to the presumption of validity, defenses to an infringement action, injunctions, damages, attorney's fees, limitations and marking and notice. But the group of sections dealing with court suits for infringement plainly stops before section 292—a *criminal* statute for falsely marking an article as patented. And § 293 is still another subject.

2. The District Court had subject matter jurisdiction of this case.

Section 293 confers personal jurisdiction on the foreign patentee—either by service on his agent for process, or, if no such agent has been appointed, by publication or other service as the court directs. Upon such service, the District Court has jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

But what jurisdiction may the District Court for the District of Columbia exercise over a foreign patentee within its personal jurisdiction? It may exercise the limited subject matter jurisdiction provided by 28 U.S.C. § 1338(a) (1970), but that generally would not include a suit on a license agreement.

The District Court for the District of Columbia also has jurisdiction to decide any controversy between the citizen of a state and the subject of a foreign state under the diversity of citizenship statute, provided there is the jurisdictional amount of $10,000. 28 U.S.C. § 1332 (a)(2) (1970).[11]

9. H.R.Rep.No.1923, 82d Cong., 2d Sess. 10 (1952); S.Rep.No.1979, 82d Cong., 2d Sess. 9, U.S.Code Cong. & Admin.News 1952, p. 2403 (1952).

10. H.R.Rep.No.1923, 82d Cong., 2d Sess. 10 (1952); S.Rep.No.1979, 82d Cong., 2d Sess. 8, U.S.Code Cong. & Admin.News 1952, p. 2402 (1952).

11. The allegations of diversity of citizenship and jurisdictional amount appear in the record. *See Neidhart,* App. 4A; *Hyman,* App. 3Q.

The United States Government apparently argues, amicus curiae, that diversity of citizenship and $10,000 amount are not required. They certainly were not required when § 293 was enacted in 1952, for the District Court for the District of Columbia then had the common law and equity jurisdiction of a state court, inherited from Maryland. Pang-Tsu Mow v. Republic of China, 91 U.S.App.D.C. 324, 327, 201 F.2d 195, 198 (1952), cert. de-

nied, 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953). It therefore had subject matter jurisdiction not only as a Federal court, over matters arising under the federal patent laws, but also as a state court over contract cases affecting rights under patents, such as license claims. However, the District of Columbia Court Reorganization Act of 1970, 84 Stat. 475, transferred to the Superior Court of the District of Columbia, the general equity jurisdiction formerly held by the District Court. D.C.Code § 11–921 (1973); Palmore v. United States, 411 U.S. 389, 408, 409, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). The Government's amicus curiae memorandum argues that § 293 was a special grant of jurisdiction to the District Court for the patent-related actions against nonresident patentees and that this survives after 1970 because the 1970 law specified that the District Court retained "its jurisdiction as a United States district court and any other jurisdiction conferred on it by law . . . ." D.C.Code § 11–501 (1973).

Assuming that § 293 confers personal jurisdiction, and that subject-matter jurisdiction must be separately located, there is a sound basis for giving § 293 a broad construction notwithstanding the narrow construction given to different language in the provision, 28 U.S.C. § 1338(a) (1970), granting exclusive subject-matter jurisdiction to Federal district courts for cases arising under the patent laws. This may well be the premise of the various rulings of the District Court denying a motion to dismiss an action brought by the United States which invoked § 293 as a basis for personal jurisdiction over foreign corporations in antitrust litigation involving patents.[12]

I see no constitutional issue in a broad reading of § 293.[13] Article III of the Constitution permits Congress to give a Federal court jurisdiction to entertain suits between citizens of the states of the United States and subjects of a foreign state. There may be situations that come within the literal language of § 293 but not Article III—conceivably, defendants who are Americans not residing in the United States, or plaintiffs who are not United States citizens—but they can be excised either as included in the statute but marginal and severable,[14] or, more likely, as not included within the statute, whose legislative history makes clear (see text accompanying note 7 supra) that this was a provision "for the benefit of American residents desiring to bring action against foreign owners of United States patents."

I respectfully dissent.

While, strictly speaking, I need not state my view on this, there being diversity of citizenship and $10,000 jurisdictional amount allegations in this case, my broad reading of § 293 is helped, I think, by the conviction that this was only intended as a long arm statute to provide personal jurisdiction where there was another basis for subject matter jurisdiction.

12. The brief of the United States Government, amicus curiae, cites the following:

United States v. Farbenfabriken Bayer, A.G., 1968 Trade Cases ¶ 72,569 (D.C.D.C.), leave to appeal denied, C.A.D.C. No. 586–68, Misc. No. 3277, 1968 Trade Cases ¶ 72,570, appeal dismissed, 393 U.S. 216, 89 S.Ct. 397, 21 L.Ed.2d 358, leave to petition for cert. denied, 393 U.S. 958, 89 S.Ct. 412, 21 L.Ed.2d 384, cert. denied, 393 U.S. 959, 89 S.Ct. 397, 21 L.Ed.2d 373 (1968); United States v. Glaxo Group Ltd., 1970 Trade Cases ¶ 73,000 (D.C.D.C.). The Glaxo case subsequently proceeded to judgment on the merits, but the issue of personal jurisdiction over the defendants under 35 U.S.C. § 293 (1970) was not litigated further. United States v. Glaxo Group Ltd., 302 F.Supp. 1 (1969), supplemented, 328 F.Supp. 709 (D.C.D.C.1971), reversed, 410 U.S. 52, 93 S.Ct. 861, 35 L.Ed.2d 104 (1973). See also United States v. Ziegler, Civil Action No. 1255 (D.C.D.C.), March 18, 1971; In Re Ampicillan Antitrust Litigation, 1971 Trade Cases ¶ 73,449 (D.C.D.C.).

13. I assume for purposes of discussion that this action cannot be justified under Article III of the Constitution as a case "arising under . . . the Laws of the United States." The point is not entirely clear. I do not presume there can be a reversion to the early expansive reading of the clause.. Osborn v. Bank of the United States, 9 Wheat. 738, 6 L.Ed. 204 (U.S.1824). But we should not be thrown off stride by the cases giving a narrow reading to 28 U.S.C. § 1338 (1970), for they probably bear the hallmarks of the fact that § 1338 gives Federal courts exclusive jurisdiction of cases arising under the patent laws. Chisum, The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation, 46 Wash.L.Rev. 633, 671 (1971). Compare Friendly, J., in T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964); Bator, Mishkin, Shapiro & Wechsler, supra, at 879.

In providing one of those narrow readings, Justice Holmes put it in American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916): "A suit arises under the law that creates the cause of action." The vitality of this Holmes view is in doubt. Certainly the correct construction of the "arising under" clause must take into account the development that the putative infringer may bring an action for a declaratory judgment of nonvalidity or non-infringement. E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852 (7th Cir. 1937). Such actions have become numerous, and the Supreme Court has passed on the merits of such actions without question as to jurisdiction. Bator, Mishkin, Shapiro & Wechsler, supra, at 896.

14. Like the "freak" case of a defendant who is stateless.