**RIKER LABORATORIES, INC., A Corporation of Delaware, Appellant,**

**v.**

**GIST–BROCADES N. V., A Corporation of the Netherlands.**

**No. 78–2322.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1979.

Decided Nov. 26, 1980.

Donald M. Sell, St. Paul, Minn., with whom Marcus B. Finnegan and Brian G. Brunsvold, Washington, D. C., were on the brief, for appellant.

Joel M. Miller, New York City, with whom Martin D. Edel and Michael M. Maney, New York City, were on the brief, for appellee.

Before WRIGHT, Chief Judge, BAZELON, Senior Circuit Judge and MacKINNON, Circuit Judge.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge.

The major issue in this appeal is whether 35 U.S.C. § 293 confers personal jurisdiction over a foreign patentee when allegations of patent misuse are made. We hold that the statute does, and reverse the determination of the district court dismissing the action for lack of personal jurisdiction. We also find that subject matter jurisdiction exists to support consideration of the antitrust claims and direct the district court, on remand, to determine whether its pendent jurisdiction should be exercised to consider the other claims presented in the complaint.

I

On July 4, 1961 Gist-Brocades N.V., a Netherlands Corporation (the defendant-appellee) was issued United States Patent No. 2,991,225 defined as "therapeutic compositions containing Orphenadrine Hydrochloride or Orphenadrine Citrate." These compositions are used in the treatment of Parkinson's Disease, obsession, depression and skeletal muscle disorders. (App. 4, Complaint ¶ 6). On December 17, 1962 Gist-Brocades ("Brocades") entered into an agreement licensing plaintiff-appellant Riker-Laboratories ("Riker"), a wholly owned subsidiary of Minnesota Mining and Manufacturing Company, to make, use and sell the

patented compositions. While Gist-Brocades is a non-resident patentee it has not filed with the Patent Office a designation of an agent for service of process in the United States. As part of the licensing agreement, Riker was licensed to use Brocades' DISIPAL trademark. Riker subsequently developed the trademarks NORFLEX and NORGESIC. All three trademarks were used by Riker in marketing medications containing Orphenadrine Hydrochloride or Orphenadrine Citrate.

By the terms of the licensing agreement, Riker was required to use the DISIPAL trademark and to obtain, develop and hold in trust the NORFLEX and NORGESIC trademarks until the license agreement was terminated or the patent expired, at which time Riker was required to assign "all its right, title and interest in and to the trademarks in question" and "that part of the good will of the business connected with the use of and symbolized by such trademark or trademarks" in the United States. (App. 5, Complaint ¶ 10). This provision of the licensing agreement forms the basis for Rikers' allegation that "Brocades, thus tied Riker to the use of trademarks that Brocades would own on compositions made under Brocades' patent." (App. 5 Complaint ¶ 10). Riker contends that this alleged patent misuse provides a basis for obtaining personal jurisdiction under 35 U.S.C. § 293 as a proceeding "affecting the patent or rights thereunder."

From 1962 to 1974, the relationship between Riker and Brocades was untroubled. During that twelve-year period, Riker paid what it describes as "substantial royalties." (App. 9 Complaint ¶ 25). In early 1975, however, unlicensed competitors intruded into Riker's sales. At a meeting held in May 1975 to map a strategy for dealing with infringers, Riker requested amendment of the licensing agreement to negate the article containing the trademark tie-in, and post-patent royalty provisions for continued use of the trademarks. Riker contended that these provisions were violative of the United States anti-trust laws, constituted patent misuse, and prevented enforcement of the patent against the infringers.

The May meeting, and several others, were unsuccessful in resolving the questions of unlicensed infringers or Riker's request for amendment of the license. On September 15, 1976, Riker informed Brocades that the existence of substantial infringing competition would require a reduction in its royalty rate by one-half, as provided by the agreement. Brocades, in return, demanded proof of the extent of the infringement. Subsequently, on July 26, 1977, Riker repudiated the license agreement, stating the royalties would be paid as though a straight license agreement existed, at the continued reduced rate, because of the infringing competition. After another unsuccessful meeting, held in September 1977, Riker cancelled the agreement on January 10, 1978. Riker identified the anti-trust questions involving the trademarks as the basis for the cancellation and advised Brocades that no further royalty payments would be made.

On March 28, 1978, Riker instituted this action requesting declaratory, injunctive, and monetary relief. On October 23, 1978, the district court dismissed the action without prejudice stating that "it appear[s] under the law of this Circuit personal jurisdiction on the basis of 35 U.S.C. § 293 is validly asserted against a foreign patentee only if the patent claim is one of infringement or invalidity, *Neidhart v. Neidhart S.A.*, 510 F.2d 760 (D.C.Cir.1975), . . .". An appeal was taken on October 19, 1978.

In the interim the patent expired on July 4, 1978.

## II

The starting point for our determination whether 35 U.S.C. § 293 provides a jurisdictional basis for Riker's action against Brocades in the United States is the provision of the statute:

Every patentee not residing in the United States may file in the Patent Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of *proceedings affecting the patent or rights thereunder.*

If the person designated cannot be found at the address given in the last designation, or *if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.* (Emphasis added).

This section is, by its terms, a long arm statute; a non-resident patentee is presented with the option of designating an agent for service of process or of receiving notice by publication or other means, such as the mail service used in this case. In either event, the service of process provides the

court with the same jurisdiction as would personal service. *E. g. U.S. v. Farbenfabriken Bayer, A.G.,* 157 U.S.P.Q. 674, 1968 CCH Trade Cases ¶ 72,569 (1968). The question, on which this appeal turns, is whether or not this case, involving the patent misuse and antitrust claims alleged here, is a "proceeding affecting the patent or rights thereunder ...".

Section 293 was enacted in 1952 as part of a comprehensive revision of the patent law. The spare legislative history states that "[t]his section provides for service on non-resident patentees," and identifies the genesis of the provision as "a new section that is needed on some occasions to obtain jurisdiction over foreign patent owners that do not reside in the United States."[1] While the Congressional reports do not bril-

---

1. The legislative history of this provision consists of the House and Senate Reports, which contain the language quoted in the text. H.R. Rep.No.1923, 82d Cong., 1st Sess. 10, 31 (1952); S.Rep.No.1979, 82d Cong., 2d Sess. 9, 31 (1952). The hearings contain only three references to the provision. The first, by the Department of State noted that the provision, (originally introduced as section 252)

 has been added for the benefit of American residents desiring to bring action against foreign owners of United States patents. At the present time, *American Manufacturers threatened by charges of infringement* of United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment. (emphasis added)

 Hearings on H.R. 3760 Before the Subcomm. No. 3 of the House Comm. on the Judiciary, 82d Cong. 1 Sess., ser. 9 at 91 (1951) [hereafter cited as 1951 Hearings].

 The second, by the Chief of the Patent Litigation Unit of the Department of Justice states:

 "The department understands that this provision has been added for the benefit of American citizens desiring to bring an action against foreign owners of United States patents. At the present time American manufacturers threatened by charges of infringement of United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment. Most foreign countries in their patent laws require foreign owners of patents issued by them to have resident agents upon whom service may be made." 1951 Hearings 98.

 The last hearing reference was contained in a report by the Patent Law Committee of the Bar Association of the City of New York which suggested an addition to the section, which was

not incorporated into the bill. The suggestion provided:

 Acceptance of the grant of a patent hereafter shall constitute an irrevocable consent to be sued as provided in this section and appointment of the Commissioner of Patents as agent of the patentee to receive service of process under this section.

1951 Hearings 222.

 The Examiner-in-Chief of the Patent Office at the time of the revision stated, regarding section 293, that:

 The last section of this title, section 293, is a new provision for obtaining service on non-resident patentees. Such a patentee may, if he wishes, designate a person residing in the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If no such person is designated, or if he cannot be found at the address given in the last designation, the United States District Court for the District of Columbia is given jurisdiction and summons may be served by publication or otherwise as the court directs. *In either case the court has the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.* This new provision fills a gap which existed in the old statute. It will enable, for example, jurisdiction over a patentee residing in a foreign country to be obtained in a declaratory judgment action involving the validity or infringement of the patent.

P.J. Federico, "Commentary on the New Patent Act," 35 U.S.C.A. 1, 58 (1954) (Emphasis added).

liantly illuminate the Congressional intent they reinforce the long arm character of the statute without identifying the parameters of that reach. In circular fashion we are returned to the language of the statute to determine whether the allegations made constitute a "proceeding[ ] affecting the patent or rights thereunder . . .".

■ From the case law, several additional characteristics of section 293 can be extracted. The provision is a long-arm statute with jurisdiction exclusively in the United States District Court for the District of Columbia. *Ag-Tronic, Inc. v. Frank Paviour Ltd.*, 70 F.R.D. 393, 401 (D.Neb.1976). The constitutionality of section 293 is founded on District of Columbia situs of a United States patent. *Japan Gas Lighter Association v. Ronson Corp.*, 257 F.Supp. 219, 231 (D.N.J.1966); *Gerber Scientific Instrument Co. v. Barr & Stroud Ltd.*, 383 F.Supp. 1238, 1240 (D.Conn.1973). Additionally, the provision was intended to *broaden* a plaintiff's ability to bring foreign defendant patent owners within the reach of a federal court. *Japan Gas Lighter Association v. Ronson Corp.*, 257 F.Supp. 219, 231 (D.N.J.1966). And, the purpose of section 293 has also been described as giving "American manufacturers relief against harassment by non-resident patentees." *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C.Cir.1977).

### A

The appellant contends that the provision of the licensing agreement requiring assignment of the trademarks developed by Riker during the period it licensed the patent constitutes an antitrust violation, and thus patent misuse by tying the trademarks to the patent, and also by requiring trademark licensing fees to be paid after expiration of the patent, a practice alleged to constitute post-expiration patent royalties. This stage of the proceeding, which is limited to assessing whether personal jurisdiction can be obtained over the defendant-appellee for such a claim by complying with 35 U.S.C. § 293, does not require determining the validity of the provisions contained in the licensing agreement. Rather, the question is whether the allegations may be considered as "affecting the patent or rights thereunder." That, in turn, requires an examination of the nature of patent misuse.

■ Misuse is an application of the venerable equity doctrine of "unclean hands" in the patent field. *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465, 77 S.Ct. 490, 494, 1 L.Ed.2d 465 (1957). The purpose of the misuse doctrine is embedded in the Constitutional provision authorizing patent protection. The doctrine "is a rejection of the concept of the patent as an absolute property right in favor of its definition as a right which must not be exercised in a manner not consistent with the constitutionally-defined purpose for which it was conferred, . . . ." *Hensley Equipment Co. v. Esco Corp.*, 383 F.2d 252, 261 (5th Cir. 1967). Misuse is part and parcel of the continuing emphasis on the fact that "[i]t is the public interest which is dominant in the patent system." *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661, 665, 64 S.Ct. 268, 271, 88 L.Ed. 376 (1943).

The patent owner receives by way of the patent laws only the right to exclude others from the use of his invention for the statutory period. 35 U.S.C. §§ 281, 283. Deprivation of that right, because of the equitable bar of patent misuse, consequently deprives the patent of its very essence.

> It has long been settled that the patentee receives nothing from the law which he did not have before, and that *the only effect of his patent is to restrain others from manufacturing, using or selling that which he has invented.* The patent law simply protects him in the monopoly of that which he has invented and has described in the claims of his patent. [citations omitted].

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 510, 37 S.Ct. 416, 418, 61 L.Ed. 871 (1917) (Emphasis added).

Misuse had its origins in a series of Supreme Court cases dealing with the doctrine

as an equitable defense against contributory infringement. The modern development of the doctrine as a defense to direct infringement originated in *Morton Salt v. G.S. Suppiger Co.*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

In that case, the respondent brought an action charging infringement of its patent for a machine used in the canning industry to deposit a predetermined number of salt tablets into cans. Without reaching the issues of validity of the patent, or infringement, the district court dismissed the complaint on the ground that the lease provision *requiring* the use of the respondent's unpatented salt tablets constituted a restraint of trade. The Supreme Court upheld the district court's dismissal on the ground that the attempt to extend the patent monopoly from the machine to the salt tablets aided "in the creation of a limited monopoly in the [salt] tablets not within that granted by the patent." The Supreme Court held:

> "A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant ..., and *the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor*." (Emphasis added) 314 U.S. at 491, 62 S.Ct. at 404.

The Supreme Court emphasized the public interest considerations inherent in patent misuse, and summarized its position by underscoring the equitable requirement that a plaintiff come into court with clean hands:

> "[e]quity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated." 314 U.S. at 493, 62 S.Ct. at 405.

While the parameters of the doctrine are indistinct (Report of the President's Commission on the Patent System, *'To Promote the Progress of the Useful Arts' In An Age of Exploding Technology* (1966)) and fluid, (*Report of the Attorney General's Committee to Study the Antitrust Laws* 251 (1955) ("The outer reach of the misuse doctrine has not yet been fully defined,")) we need not attempt to define its precise limits to resolve the issue presented here.

■ The essence of patent misuse as an equitable bar to maintenance of an infringement action has been reiterated numerous times. *B. B. Chemical Co. v. Ellis*, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367 (1942); *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (*Mercoid I*); *Mercoid Corp. v. Minneapolis-Honeywell Regulator Co.*, 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 376 (1944) (*Mercoid II*); *Dawson Chemical Co. v. Rohm & Haas Co.*, —— U.S. ——, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980). For the defense of misuse to apply, the inequitable conduct must relate to the patent being litigated, and to the party who asserts it as a defense. *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 238 (10th Cir. 1968) *cert. denied* 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968). Both of those conditions are present here.

■ Applying the doctrine of misuse to the allegations in this case, we conclude that patent misuse, as an equitable bar to maintenance of infringement proceedings "affect[s] the patent or *rights thereunder*." The operative language of this provision of the statute is written in the disjunctive. Clearly invalidity would "[affect] the patent," since it results in the patent's unenforceability. Similarly, patent misuse results in the same consequences, albeit for a period of time subject to being rehabilitated after the misuse is purged. If a patentee cannot enforce his patent by means of an infringement action to protect his licensees, the conclusion is inescapable that "rights" under the patent, including the right to maintain an infringement action, are affected. Jurisdiction over Gist-Brocades is clearly authorized by 35 U.S.C. § 293.

## B

Appellee urges, and the district court found, that the law of this circuit, as expressed in *Neidhart v. Neidhart, S.A.*, 510 F.2d 760 (D.C.Cir.1975), precluded the use of section 293 to confer personal jurisdiction in patent licensing disputes.

*Neidhart* was actually two cases consolidated for appeal.

In *Neidhart v. Neidhart, S.A.*, an Illinois plaintiff filed suit in the District Court for the District of Columbia against the defendant, a Swiss corporation, which was believed to own several United States patents, and also against several Swiss citizens who were believed to be the sole owners and managing officers of the defendant corporation. The plaintiff sought a judgment declaring the validity of a sublicensing agreement for the purpose of establishing that he was entitled to certain royalties. The *Neidhart* plaintiff also sought an injunction enjoining the defendant from interfering with the exercise of sublicense rights.

In *Neidhart's* companion case, *George Hyman Construction Co. v. Spiroll Corporation, Ltd.*, a Maryland corporation filed suit in the United States District Court for the District of Columbia against a Canadian corporation which owned certain United States patents. The complaint alleged that the Canadian firm had breached an agreement giving Hyman Construction Co. an exclusive territorial use license and sought a declaratory judgment establishing the existence of the license, an order directing specific performance and injunctive relief forbidding the granting of additional, conflicting licenses. The complaint also requested monetary damages.

In both cases, the plaintiffs attempted service of process pursuant to 35 U.S.C. § 293; in both cases, the district court held the statute unavailable to confer personal jurisdiction. This court affirmed, over a vigorous dissent.

The gist of the *Neidhart* conclusion is that the actions were essentially contract disputes, only incidentally involving patents. The court wrote

[t]he rights of the parties derive solely from the terms of their contracts. Appellants plainly have no rights under the patents; their rights, if any, are only those emanating from the 'four corners' of their respective agreements. We see no reason to bring such matters within the realm of the federal judiciary nor do we think Congress intended such a result.

From a review of the legislative history, the court concluded that

[t]he least that may be adduced from the legislative history is that Congress most assuredly did not contemplate application of section 293 to actions to determine license rights.

The dissenting judge considered the majority's reading of section 293 to be narrow, arguing that the provision was intended to operate as a long arm statute and had its reach hobbled by the majority interpretation of the legislative history.

*Neidhart* does not control this case. The emphasis in *Neidhart* was on the private nature of the dispute between the parties; there, the only relation to the patent laws was the fact that the center of the *contract dispute* happened to be a patent rather than some other subject. Consequently, the majority did not consider the license dispute as "affecting the patent or rights thereunder." This case, however, embraces the patent laws directly, rather than the tangential contract involved in *Neidhart*.

The holding in *Neidhart* is capsulized in the final paragraph of the court's opinion:

"In sum, we hold that where plaintiffs seek merely to resolve the existence, *vel non*, of patent license agreements and their rights thereunder, section 293 is not available to effectuate service of process on nonresident patentees.

510 F.2d at 765.

▇ This statement of the scope of *Neidhart* distinguishes that case from the one at bar. *Neidhart* involved an action "merely to resolve the existence, *vel non*, of patent license agreements and their rights thereunder...." A patent license is "only leave to do a thing which the licensor could prevent. A license is really a waiver of the

right to sue." 4 Walker on Patents § 381 (Deller ed. 1965) [footnotes omitted]. While the genesis of the dispute here is a license agreement (transaction), the heart of the dispute does not involve mere license terms but the effect under the antitrust laws of the terms of the patent license on rights under the patent. What the plaintiff seeks to invoke the court's jurisdiction to decide is not simply a question of whether royalties are owed to Gist-Brocades under the license or the continuing effect of the license now that the patent has expired, but rather whether Riker's rights under the patent are affected by the antitrust laws.

### C

 A troublesome factor in this litigation is an issue which was not briefed by the parties. The patent in this action expired shortly after the action was filed in the district court. As a consequence, since all the rights which the patentee previously held are now in the public domain, *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), can the rights in the patent conferred by the license be said to be affected by allegations of misuse? Or has the requisite controversy which affects the patent been mooted by the expiration of the patent's statutory 17 year term? Because the allegations here clearly create a controversy between the parties which can be adjudicated by a court, the expiration of the patent does not, in our opinion, affect the reach of section 293. The action was commenced prior to the expiration of the patent, and relief in the form of damages and a declaration regarding the outstanding license terms concerning the trademarks, remains to be granted despite the expiration of the patent. Most persuasive, however, in reaching this conclusion is the language of the statute itself. Section 293 provides that service through the district court is, once effected, the equivalent of jurisdiction obtained by personal service. The requisite personal jurisdiction over the foreign patent owner is effected by the service authorized by the statute. Once made, it remains effective even though the patent has expired since the provision is a jurisdictional, rather than a substantive

one. If the plaintiff prevails, the relief requested will be granted under other provisions of the law, not section 293. Consequently the expiration of the patent does not affect the personal jurisdiction over Gist-Brocades which was effected by section 293.

### III

Gist-Brocades also urges dismissal of the action on the ground of lack of subject matter jurisdiction; i. e., that no case or controversy exists between the parties sufficient to support a declaratory judgment action. We identify subject matter jurisdiction sufficient to support the antitrust allegations, and remand the case to the district court for evaluation of pendent jurisdiction to consider the other claims. We also find a sufficient case or controversy to support a declaratory judgment action.

### A

 Riker bases subject matter jurisdiction on 28 U.S.C. § 1338(a) (Patents); 28 U.S.C. § 1337 and 15 U.S.C. § 15 (Antitrust); and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments Act). The Declaratory Judgment Act, however, provides only an additional remedy; it does not confer jurisdiction upon a federal court. *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Morgantown Glassware Guild, Inc. v. Humphrey*, 236 F.2d 670 (D.C. Cir.), *cert. denied* 352 U.S. 896, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956); *Continental Bank & Trust Co. v. Martin*, 303 F.2d 214 (D.C.Cir. 1962); *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 366 F.Supp. 51 (D.D.C.1973); *American Federation of Government Emp. v. Califano*, 453 F.Supp. 550 (D.D.C.1978). And, despite our conclusion that the action is one affecting the patent within the meaning of 35 U.S.C. § 293, it is not strictly one "arising under" the patent laws since it is not an action for infringement of invalidity on statutory grounds. Rather it is one affecting rights under a patent that because of the antitrust laws became unenforceable because of misuse. The operative semantics of the two statutory sections involved are different; the result under the two statutory sections

is likewise different and an independent basis for subject matter jurisdiction must be identified. *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 420 (7th Cir. 1977); *Geni-Chlor Intern. v. Multisonics Dev. Corp.*, 580 F.2d 981, 983 (9th Cir. 1978); *Poles, Inc. v. Beecker*, 461 F.Supp. 878, 881 (E.D.N.Y. 1978).

Gist-Brocades contends that this case involves a contract dispute, only incidentally involving a patent. We disagree with that characterization. More accurately, this case involves substantive allegations of antitrust violations that affect rights under the patent (App. 9, ¶ 21) and involves a request for compensatory and injunctive relief. (App. 15, ¶¶ (j)(k)(*l*)). We find that subject matter jurisdiction exists under the antitrust statutes, 28 U.S.C. § 1337.[2] Independently, the complaint alleges patent misuse as a bar during the misuse to the enforcement of the now expired patent (App. 8–9, Complaint ¶¶ 20, 22–24; App. 14–15, Complaint ¶¶ 4(b), (c) [antitrust violations]; (a)(e) [misuse]; (d) [tie-in]). In fidelity to its origins as an equitable defense, it has been held that patent misuse does not state an affirmative cause of action for which damages can be recovered. *See Transitron Electronic v. Hughes Aircraft*, 487 F.Supp. 885, 892–93 (D.Mass.1980). *Transitron* was a case of first impression; we need not decide, because of the remand of this case, whether our view on this question would accord with the court in *Transitron*. Rather, the district court should determine in the first instance whether the misuse is asserted only as a bar to potential enforcement of the license provisions or also as a basis for affirmative relief and, if so, whether misuse constituting a violation of the anti-trust laws provide a basis for affording damages.

**2.** § 1337. Commerce and anti-trust regulations

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. (June 25, 1948, c. 646, § 1, 62 Stat. 931.)

Our finding that the district court has jurisdiction over a federal claim and a federal defendant is not dependent upon the exercise of

The record is insufficiently complete for us to evaluate other possible bases for subject matter jurisdiction. On remand, the district court should consider, in the first instance, whether in the exercise of its informed discretion pendent jurisdiction should be exercised to consider the additional claims which are presented by the complaint. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), 28 U.S.C. § 1338(b).

### B

A federal court may not accept jurisdiction over a hypothetical or abstract question; there must be an active dispute between the parties. These requirements apply to a declaratory judgment action as well as to action seeking compensatory or injunctive relief. *United Public Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). While Gist-Brocades did not answer the complaint, moving instead for dismissal, Fed.R.Civ.P. 12(b)(1), (2) and (5), the pattern of discussions between the parties over the issues involved in this case clearly illustrate the existence of an anti-trust controversy over the effect of the licensing terms on the rights of the respective parties under the patent. Despite the expiration of the patent there remain many issues in dispute: the effect on the patent rights of the antitrust aspects of the license agreement regarding the use of the trademarks, the payment of royalties and ownership of the trademarks.

To be justiciable a controversy must be actual as opposed to one that is

"hypothetical or [of] abstract character; ... [or] one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal in-

pendent-party jurisdiction, *compare Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Instead, 35 U.S.C. § 293 operates here, like a defendant's presence or consent, to provide personal jurisdiction over the anti-trust claims against Gist-Brocades. Section 293 applies not because the nonfederal patent claim is appended to the federal anti-trust claim, but because the anti-trust claim involves patent rights.

terest.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1936).

In *Windmoller v. Laguerre*, 284 F.Supp. 563, 566 (D.D.C.1968) the Court exercised jurisdiction over a declaratory judgment action involving a patent stating:

"[T]he controversy is real and substantial on the pleadings and is real and substantial in economic terms. The interests of the parties are adverse and there are legal rights which should be resolved. The pleading appears appropriate for judicial determination. It would be neither equitable nor wise to draw too narrow a view of the meaning and purpose of the Declaratory Judgment Act where there are clearly legal rights to be resolved and no other forum where the varied issues here tendered have all been brought into focus in a single lawsuit."

Nothing in this case suggests Riker is litigating an abstract question. Rather, this case involves issues which are vigorously contested by the parties and are of substantial magnitude.

## IV

We therefore find that Riker has obtained personal jurisdiction over Gist-Brocades, and reverse the judgment of the district court dismissing the action. We also find that subject matter jurisdiction exists to support consideration of the antitrust claims and direct the district court, on remand, to determine whether its pendent jurisdiction should be exercised to consider the other claims presented by the complaint.

The case is remanded to the trial court for a trial on the merits.

Nothing in this opinion should be interpreted as a ruling on the merits of the case which are not before us and upon which we express no opinion.

*So ordered.*