**T.J. SMITH AND NEPHEW LIMITED, Plaintiff,**

v.

**PARKE, DAVIS & COMPANY d/b/a Deseret Medical; and Acutek Adhesive Specialities, Inc., Defendants.**

Civ. No. C–85–0615W.

United States District Court,
D. Utah, C.D.

Nov. 13, 1985.

Albert L. Jacobs, Jr., Mark H. Sparrow, New York City, Louis H. Callister, James R. Holbrook, Andrew C. Hess, Salt Lake City, Utah, for plaintiff.

H. Ross Workman, David O. Seeley, Salt Lake City, Utah, Aaron Passman, Sandy, Utah, for defendants.

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

WINDER, District Judge.

This case, involving the alleged infringement of plaintiff's patent, is before the court on defendants' motion for partial summary judgment. The parties fully briefed their arguments and then presented oral argument to this court on August 16, 1985. Albert L. Jacobs, Jr., Mark H. Sparrow and Andrew C. Hess appeared on behalf of the plaintiff, T.J. Smith and Nephew Limited. H. Ross Workman, David O. Seeley and Aaron Passman appeared on behalf of the defendant, Deseret Medical. The court took the matter under advisement and has fully reviewed the memoranda submitted by the parties and all relevant authority. Being fully advised, the court now renders the following decision and order.

### BACKGROUND

Plaintiff, T.J. Smith and Nephew Limited ("Smith & Nephew"), is a corporation of the United Kingdom and the owner of domestic and foreign patents related to a continuous synthetic polymer adhesive affixed to a moisture-vapor permeable continuous backing member. Smith & Nephew's adhesive is useful and commercially successful for a number of purposes including use as a surgical drape, a suture strip, an adhesive dressing or a bandage.

Smith & Nephew obtained United States Patent Number 3,645,835 entitled "Moisture-Vapor-Permeable Pressure Sensitive Adhesive Materials" (hereinafter the "original patent") on its adhesive on February 29, 1972. In 1980, Smith & Nephew filed for reissue of the original patent pursuant to 35 U.S.C. § 251. On May 14, 1985, Smith & Nephew's original patent was surrendered and a reissue was granted under United States Reissue Patent Number Re. 31,887 (hereinafter the "reissue patent").

Defendant, Deseret Medical ("Deseret") is an unincorporated business association that makes and sells a number of medical products. One of its products is a wound

dressing sold under the trademark "Ensure-it." Smith and Nephew brought the present action complaining that Deseret's Ensure-it wound dressing infringes the reissue patent.

Deseret brought this motion for partial summary judgment seeking relief pursuant to 35 U.S.C. § 252, the provision governing the effect of reissue patents. Deseret argues that "[u]nder 35 U.S.C. § 252, the owner of a reissue patent can only obtain recovery for pre-reissue infringement where the reissue patent repeats claims which were in the original patent." (Memo in support of Deseret's Motion for Partial Summary Judgment, p. 1.) They contend that none of the claims in Smith & Nephew's reissue patent are identical to claims appearing in the original patent and that they are therefore not liable for any pre-reissue acts of infringement.

Smith & Nephew opposes Deseret's motion on the ground that the record does not contain sufficient evidence to warrant the application of § 252. They argue that whether § 252 is available to relieve Deseret from liability for any pre-reissue infringement is dependent upon whether the allegedly infringed claim of the reissue patent is identical to a claim in the original patent. They further argue that the issue of whether the allegedly infringed claim of the reissue patent is identical to a claim of the original patent turns on issues of fact which are disputed by the parties.

## DISCUSSION

The basic thrust of Deseret's motion is that because the allegedly infringed claim of the reissue patent does not repeat a claim of the original patent, Deseret is not liable for any alleged infringement prior to May 14, 1985, the date of the reissue. The statutory basis of Deseret's argument is 35 U.S.C. § 252 which provides that a cause of action based on an original patent will survive a reissue only so long as the claims of the original and reissued patent are identical.[1] It also provides for "intervening rights" in a manufacturer who has infringed a valid claim of a reissued patent so long as the allegedly infringed claim of the reissue patent is not identical to a claim of the original patent.[2]

Were we to grant Deseret's motion for partial summary judgment, the present lawsuit would be greatly simplified.

---

1. 35 U.S.C. § 252 provides:

"The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue."

2. "Intervening rights" encompass the rights given an infringer under 35 U.S.C. § 252 "to continue to use or sell those infringing goods which were made, purchased, or used prior to the reissue grant, unless [the infringer] infringes a valid claim of the reissue patent which was in the original patent." *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885, 901 n. 35 (10th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). A court may also award intervening rights, "to the extent it deems equitable, for either the conditional or unconditional continuation of the making, using, and selling of the infringing goods or process." *Id.*

Granting this motion would entirely eliminate the need for discovery and trial concerning sales made by Deseret prior to the date of the reissue. It would also avoid the need for a separate determination of patent infringement as to any pre-reissue variations in Deseret's product and would alleviate the need to resolve issues concerning Deseret's pre-reissue conduct. We find, however, that this lawsuit cannot be so simplified because a genuine issue of material fact exists with regard to the issue of whether the allegedly infringed claim of the reissue patent is identical to a claim of the original patent.

THE LAW: This case is governed by 35 U.S.C. § 252, the section which specifies the effect of reissue patents. The question presented for this court is a mixed question of fact and law. Resolution of this motion turns on both the interpretation that is given the term "identical" as it is used in § 252 and on an application of § 252 to the facts of this case.

Both parties agree that the interpretation given to the term "identical" is not the one that a literal reading of the term suggests. The parties disagree, however, on the extent of the differences that can exist between the claims of an original and reissue patent before they will be found not identical for purposes of § 252. Deseret

urges that this court read "identical" as embracing only those changes that do not modify the scope of the claim. It contends that practically any change in wording constitutes such a modification. Smith & Nephew urges that the claims of the reissue patent need only be "substantially identical" to those of the original patent and that clarifying amendments as well as mere differences in wording and phrasing will not defeat an assertion that claims are identical.

The different definitions of the term "identical" urged by the parties seem to go more to the application of the definition than to the definition itself. Both parties agree that claims are not identical where the scope of one claim differs from the scope of the other.[3] Both parties also concede that "identical" has been given less than a literal meaning when interpreted in the context of § 252.[4] The parties part company on the issue of whether adding a modifying phrase to the reissue changed the scope of the claim.

THE RECORD: This motion is before the court upon an almost bare factual record. The only evidence in the record is the reissue patent itself.[5] Deseret acknowledges the scant evidence before this court but contends that the precise language of the patent claims is all that is

---

3. The distinction between the "no modification of scope" definition urged by Deseret and the "substantially identical" definition urged by Smith & Nephew is merely semantic. An amendment which changes the scope of a claim would *a fortiori* preclude a characterization of the claims as "substantially identical." Similarly, claims characterized as not "substantially identical," would necessarily differ in scope. *Cf., Johnson v. Textron,* 579 F.Supp. 783, 790 (D.R.I.1984), *aff'd,* 758 F.2d 666 (Fed.Cir.1984). (A reissue narrowed in scope can still be considered substantially identical for purposes of § 252).

4. No court has held that a reissue claim must be a word for word copy of an original claim before denying intervening rights under § 252. For example, in *Akron Brass Company v. Elkhard Brass Manufacturing Company,* 353 F.2d 705 (7th Cir.1965), the Court of Appeals for the Seventh Circuit found that although the claim of the reissue patent in question substituted the word "outlet" for the word "inlet," the claims

were still "identical" for purposes of § 252. Similarly, in *Austin v. Marco Dental Products, Inc.,* 560 F.2d 966 (9th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978), the court interpreted "identical" as used in § 252 to mean "substantially identical." It therefore held that where a modification in a claim is merely to clarify and make more precise the language used, without substantive changes in the claims, the defendants cannot take advantage of the rights provided under § 252.

5. The language of the claims in the original patent is also before the court inasmuch as the manner in which reissue patents are issued by the United States Patent Office indicates the differences in language between the original patent and its reissue. Brackets are used to identify language that was removed from the original claim by amendment and underscoring is used to identify language that was added to the claim by amendment.

necessary to decide this motion in their favor. They argue that a comparison of the language in the original and reissue patents and the differences that such a comparison discloses preclude a determination that the allegedly infringed claim of the reissue is substantially identical to a claim of the original patent.

Smith & Nephew concedes that the language of the reissue patent differs from that of the original patent but opposes Deseret's motion by arguing that this fact alone does not preclude a finding that the claims of the original and reissue patents are "substantially identical."[6] They contend that claims cannot be properly interpreted without going beyond their literal language and examining evidence not currently in the record. Smith & Nephew also opposes Deseret's motion on the rationale that relief under § 252 is a matter of equitable discretion for the court and that the record is barren of evidence with regard to the equities of this case.[7]

THE PATENTS: Smith & Nephew specifically urges that Claim 12 of the reissue patent ("Claim 12") contains claims of the same scope as Claim 15 of the original patent ("Claim 15"). Deseret and Smith & Nephew agree that the literal language of Claim 12 of the reissue and Claim 15 of the original patent are not identical word for word copies of one another. Claim 12 contains modifiers that are absent from Claim 15. These modifiers consist of the words "which is" and "unreinforced" placed so as to modify the term "thermoplastic polyurethane film." Where the parties disagree is whether the existence of the additional modifying phrase in Claim 12 constitutes a change in scope from Claim 15.[8]

Deseret argues that the addition of the modifying phrase narrowed the scope of Claim 15 in two specific ways. First, it argues that under the original patent, either a reinforced *or* an unreinforced backing material would have fallen within the claim while the specification of the term "unreinforced" in the reissue dictates that a material with a reinforced backing does *not* infringe the patent. Second, Deseret argues that the substitution of the term "which is" for the term "comprises" results in a narrowing of scope by changing an inclusive term to a restrictive term.[9]

Smith & Nephew disagrees with Deseret's interpretation of the amendments in the reissue. It maintains that the original patent reflected the limitations added to the reissue patent and that the amendment was one of mere clarification that did not

6. Smith & Nephew also argues that even should this court hold that the reissue claim is of a different (presumably narrower) scope than an original claim, this motion should be denied on the ground that § 252 does not apply to narrowed reissues. "Narrowed reissues" refers to those patents where the claims of the reissue are narrower in scope than those of the original patent. This is an issue which the Tenth Circuit has not yet decided. *See Plastic Container Corp.,* 607 F.2d at 901 n. 36. It is not necessary for us to decide this issue in light of our holding that a genuine factual dispute exists over the scope of the reissue claim in relation to the scope of the original.

7. It is unnecessary to address this contention inasmuch as this motion is denied on an alternate ground.

8. Claim 12 of the reissue patent, which indicates through underscoring the additions made to the original patent, reads as follows:

12. A moisture-vapous-permeable-pressure-sensitive adhesive material for use on animal skin and nails, comprising a backing material *which is an unreinforced thermosplastic polyurethane film* having a pressure-sensitive adhesive on at least substantially the whole of the body-adhering portion of at least one surface of said backing material and said adhesive being moisture-vapour-permeable and unaffected by water and both said backing material and said adhesive comprising a synthetic polymer and being continuous and nonpermeable to liquid water, said adhesive material having a moisture vapour permeability of at least 300 g./sq. meter/24 hours/40°C/80 percent R.H.

9. Claim 15 of the original patent, which modified Claim 12 of that patent, provided that the backing material of original Claim 12 "comprises" a thermoplastic polyurethane film. Claim 12 of the reissue specifies a backing material "which is" ... thermoplastic polyurethane film. Deseret argues that "compromises" is an inclusive term permitting the inclusion of unspecified elements or materials whereas the term "which is" is a restrictive term incapable of permitting inclusion of unspecified elements.

change the scope of the claim.[10] It strenuously urges that extensive external evidence will be required for this court to evaluate whether the additional language in Claim 12 constituted a substantive change from, or a mere clarification of, Claim 15.[11]

We agree with Smith & Nephew that additional evidence is necessary before this court can determine whether Claim 12 is "identical" to Claim 15 for purposes of § 252. Ample caselaw supports our conclusion that such a determination cannot be made solely on the basis of the language of the claims.[12]

In *General Plastic Corporation of America v. Finkelstein*, 145 F.Supp. 862 (E.D.Penn.1956), as in this case, the court confronted, on a motion for summary judgment, the issue of whether a claim in a reissue patent was "identical" to a claim of the original patent within the meaning of 35 U.S.C. § 252. In *Finkelstein*, however, the court relied on much more than the bare language of the claims themselves. The court referred to the drawings and specifications contained in the patent in order to determine whether the substitution of the phrase "a flexible inverted generally U-shaped strap" for the phrase "a

flexible inverted V-shaped strap ... the ends of said strap extending below said molded body member ..." changed the scope of the claims. In discussing the application of § 252, the court stated:

> Were we to read the claim of the [p]atent independent of the drawings and specification, such a claim would be incomplete, and the description "a flexible inverted V-shaped strap" would have to be accepted as meaning exactly what it said. But this we are not permitted to do. It is elementary that the claim is to be read in light of the disclosure on the specification.

145 F.Supp. at 863. After reading the claims in light of the drawings and specifications, the court concluded that the claims were identical for purposes of § 252 inasmuch as the "change [was] ... clearly a correction of a mistaken description." *Id.*[13]

Similarly, in *Doble Engineering Co. v. Leeds & Northrup Co.*, 134 F.2d 78 (1st Cir.1943), the court noted that, like a contract, a patent is to be construed with "reference to the circumstances surrounding its inception." Thus, in interpreting the scope of the patent claims at issue, the court looked not only at the contents of the patent itself but at the file wrapper of the

---

**10.** Smith & Nephew concedes that, as a whole, the reissue patent is narrower in scope than the original patent. The fundamental contested issue of fact is whether Claim 12 of the reissue is of the same scope as Claim 15 of the original.

**11.** This point was illustrated in oral argument when counsel for Smith & Nephew represented that he knew of no "continuous" reinforced backing material. If counsel was correct and there is no "continuous" *and* reinforced backing material in existence, the addition of the term "unreinforced" to Claim 12 would not have changed the scope of that claim inasmuch as Claim 15 specified a "continuous" backing. In order to determine whether this is the case, the court would need evidence bearing on the existence and feasibility of "continuous reinforced backing material." Evidence of this nature, however, is not currently part of the record.

**12.** Most of the cases cited by Deseret in support of the opposite conclusion are inapposite to the case at bar because they arose after a complete trial on the merits of the patent claims in question. *See e.g., Seattle Box Company v. Industrial*

*Crating & Packing,* 731 F.2d 818 (Fed.Cir.1984). In those cases, the courts had the opportunity to gather complete evidence with regard to the scope and nature of the particular claims involved. Thus, they do not support Deseret's contention that the issue of claim identity for purposes of § 252 can be resolved in a motion for summary judgment on an almost empty factual record. In deciding whether the reissue had changed the scope of a particular claim, those courts made a determination based on much more than the mere language of the particular claims. In this case, Deseret asks us to resolve this important issue without the benefit of outside evidence.

**13.** This court acknowledges that the entire reissue patent, including the drawings and specifications, is part of the record. However, the arguments of the parties rely only on the actual language of the claims and on other "facts" not in the record. There has been no assertion that the drawings, specifications or other parts of the patent itself would be of any assistance in determining whether the claims are identical for purposes of § 252.

U.S. Patent Office which contained the full prosecution history of the patent in question.

We are also persuaded by the reasoning of the court in *Vernay Laboratories, Inc. v. Industrial Electronic Rubber Company*, 234 F.Supp. 161 (N.D.Ohio 1964). Vernay was a patent infringement case in which the defendant had moved for summary judgment. One of the issues raised was whether the allegedly infringed claims of the original patent were "identical" to a claim of the reissue. The court denied the motion, holding that the issue could not be resolved on summary judgment. It reasoned that even though many of the facts were agreed upon, there was irreconcilable disagreement on the conclusions to be drawn from the admitted facts. Particularly in a complex patent case, different conclusions can be drawn from established facts and expert testimony may be necessary to resolve the dispute. *Id.* at 165. *See also, Autogiro Company v. United States*, 384 F.2d 391, 181 Ct.Cl. 55 (1967) (claims are best construed in connection with other parts of the patent instrument and with the circumstances surrounding the inception of the patent application); *Johnston v. Textron*, 579 F.Supp. at 793 (court looked to history of the patent's prosecution and listened to expert testimony in deciding the scope of the claims).

The contents of defendants memoranda supporting its motion for partial summary judgment independently demonstrate the inappropriateness of granting this motion on the current state of the record. As indicated above, the only evidence properly before the court is the reissue patent itself. Deseret's memoranda, however, contain numerous references to various other documents and so-called facts, which are before this court only as "Exhibits." [14] For example, Deseret bases its whole argument in support of this motion on two allegedly "material facts with respect to which no genuine issue exists." (Memo in Support of Deseret's Motion, p. 4.) "Fact" number two is that "[n]o reissue claim ... is identical to any claim appearing in the original ... patent." Following this "fact" is a citation to two exhibits—a brief appealing a decision of the patent examiner and a proposed amendment submitted to the Commissioner of Patents and Trademarks in relation to the prosecution of the reissue patent. Neither of these documents is properly before this court.[15]

After a careful review of the record, the caselaw and in light of the recognition that different conclusions can be drawn from the language of the patent claims at issue, we agree with Smith & Nephew that a genuine issue of fact remains. Federal Rule of Civil Procedure 56(c) provides that there must be no "genuine issue as to any material fact" before a court may grant a summary judgment motion. The issue of whether Claim 15 is identical to Claim 12 for purposes of § 252 is an issue that turns on facts not properly in the record.

Accordingly,

IT IS HEREBY ORDERED that Deseret's motion for partial summary judgment is denied.

---

**14.** Smith & Nephew contends that many of these exhibits are taken out of context. The court has no way of evaluating this claim inasmuch as the documents are not a part of the record and there is nothing supporting either their authenticity or completeness. Neither is there any evidence indicating the context of the various statements pulled from the documents in question.

**15.** In order to be considered as evidence on a motion for summary judgment, exhibits must be made a part of an affidavit and properly authenticated. *See,* Fed.R.Civ.P. 56(e); 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2722 (1983).