**T.J. SMITH AND NEPHEW LIMITED, Plaintiff,**

v.

**CONSOLIDATED MEDICAL EQUIPMENT, INC. and Avery International Corporation, Defendants.**

No. 85–CV–720.

United States District Court, N.D. New York.

Oct. 10, 1986.

Jacobs & Jacobs, New York City (Albert L. Jacobs, Jr., Mark H. Sparrow, of counsel), Bond, Schoeneck & King, Syracuse, (Tracy H. Ferguson, Deborah Karalunas, of counsel), for plaintiff.

Pearne, Gordon, Sessions, McCoy, Granger & Tilberry, Cleveland, Ohio (Charles P. Gordon, of counsel), Larson & Taylor, Arlington, Va., (Andrew E. Taylor, William E. Jackson, of counsel), for defendants.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

This action, brought by plaintiff T.J. Smith & Nephew Limited (Smith & Nephew) against defendants Consolidated Medical Equipment, Inc. (Con Med) and Avery International Corporation (Avery) charges the defendants with infringement of the plaintiff's Reissue Patent No. Re 31,887 (the '887 reissue patent). The court has jurisdiction of the action pursuant to 28 U.S.C. § 1338(a).

Currently pending before the court is the plaintiff's motion for a preliminary injunction seeking to enjoin the defendants from manufacturing and marketing two products which allegedly infringe the '887 reissue patent. On September 11 and 12, 1986, a hearing was held during which expert witnesses for both sides testified in support of and in opposition to the motion. The court has carefully considered the evidence before it, and the following constitutes its findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

## FACTS

Plaintiff Smith & Nephew is a British corporation that was assigned Patent No. 3,645,835 (the '835 patent) on February 29, 1972. The '835 patent dealt with "moisture-vapour-permeable pressure sensitive adhesive materials." On June 6, 1980, the plaintiff filed an application for the reissue of the '835 patent and on May 14, 1985 was granted the '887 reissue patent. Upon being granted the reissue patent, the plaintiff surrendered the original patent. The '887 reissue patent, like the '835 patent, deals with, among other things, "moisture-vapour-permeable pressure sensitive adhesive materials." The plaintiff manufactures a product marketed under the brand name "OpSite," a wound dressing that utilizes the above-mentioned materials in its construction.

Defendant Con Med is a New York corporation that, since 1983, has marketed wound dressings under the brand names Veni-Gard and Derma-Shield. Co-defendant Avery is a Delaware corporation that manufactures "moisture-vapour-permeable pressure sensitive adhesive materials" and sells them to Con-Med, among other companies, for its use in the Veni-Gard and Derma-Shield products. Avery has agreed to indemnify Con Med for any damages awarded against it resulting from patent infringement litigation.

The plaintiff alleges that Con Med's wound dressings infringe Claim 12 of the '887 reissue patent, which provides:

A moisture-vapour-permeable pressure-sensitive adhesive material for use on animal skin and nails, comprising a backing material which is an unreinforced thermoplastic polyurethane film having a pressure-sensitive adhesive on at least substantially the whole of the body-adhering portion of at least one surface of said backing material, both said backing material and said adhesive being moisture-vapour-permeable and unaffected by water and both said backing material and said adhesive comprising a synthetic polymer and being continuous and nonpermeable to liquid water, said adhesive material having a moisture vapor permeability of at least 300 g./sq. meter/24 hours/40° C./80 RH.

During the evidentiary hearing, the court's attention was directed primarily to three elements of the claim. The plaintiff has alleged that the backing material on

the alleged infringing products is unreinforced, that the backing material and adhesive on the products is unaffected by water, and that the backing material and adhesive are continuous as defined in the patent.

Of the above three elements in dispute, the parties devoted the least effort to the issue of whether the backing material on the alleged infringing products is unreinforced. The plaintiff's expert stated unequivocally, although without full explanation, that the backing material on the products is unreinforced. The defendants' expert witness testified that the backing material is reinforced in at least two ways. The Veni-Gard wound dressing contains foamed plastic reinforcements that surround the backing layer. Further, both Veni-Gard and Derma-Shield utilize a transfer sheet which, according to the expert, reinforces the backing layer and allows the dressing to be applied. At this juncture, the court has an insufficient basis to determine whether the backing material on the Veni-Gard and Derma-Shield products is unreinforced.

As to the next element of the claim under consideration, the plaintiff asserts that neither its product nor the defendants' products contain a backing material or an adhesive that is affected by water. The defendants maintain that the adhesive on the products is in fact affected by water. To demonstrate their point during the hearing, one of the defendants' experts conducted the "rolling tack ball" test for the court. The witness cut a strip of the adhesive manufactured by Avery for use in the Con Med products and laid it flat face-up on a table. A ball bearing was then rolled down an incline onto the adhesive, where the adhesive stopped its forward progress before it travelled more than an inch or two from the bottom of the incline.

The adhesive was then sprayed with water, and the excess water was wiped off. The ball bearing was again rolled down the incline and onto the adhesive, but this time, it did not stop and continued to roll off the table. Thus, the defendants argue, the adhesive is very much affected by water.

The plaintiff's expert challenged this test in two ways. First, he stated that under the circumstances that these products are normally used, that is, with the wound dressings attached to the skin, the adhesive would not come into direct contact with water and would not be affected by it. Second and more convincing was the expert's assertion that the adhesive would again be tacky as soon as the water dried. The court did observe that very shortly after the "rolling tack ball" test was conducted, the adhesive apparently regained all of the tackiness that it possessed before it was sprayed with water. The plaintiff's expert stated that during the second part of the test, the ball bearing was rolling on the water, not on the adhesive, and that the water did not affect the adhesive itself.

Obviously, the court's determination of this particular issue is dependent greatly on its interpretation of the phrase "unaffected by water." While the court is convinced that the layer of water on the adhesive affected the ball bearing's speed rolling over the adhesive, the court is not convinced that the water affected the adhesive itself. Once the water dried, the adhesive was, as stated earlier, quite tacky. Therefore, a reasonable basis does exist for the court to find that the adhesive is unaffected by water. Little if any evidence was presented on the effect of water on the backing material, and the court makes no finding in that regard.

The plaintiff asserts that the backing material and the adhesive on the Con Med products are continuous, while the defendants assert, not surprisingly, that they are not. The term "continuous" is defined in the '887 reissue patent as follows:

The expression "continuous" as used throughout the present specification, including the claims, is intended to mean that the material is such that it contains no discontinuities which are visible, either by the naked eye or under an optical microscope, and are such that water va-

por passes through such materials by intermolecular diffusion.

*Id.,* Column 2, lines 35–41. The defendants presented evidence during the hearing that the backing material and adhesive on their products is not continuous because small bubbles can be seen when viewing the products under an optical microscope at ten times magnification.

The plaintiff makes several points to rebut the defendants' position. One of the plaintiff's experts testified that, when viewed through an extremely powerful scanning electron microscope, no discontinuities can be seen on the products. Similarly, when he viewed the products under an optical microscope at 150 times magnification, he could again not discern any discontinuities. Finally, he testified that he conducted a test to determine if dye could penetrate the alleged infringing products. Because it could not, he maintained that further support was lent to the argument in favor of continuity.

The court finds the plaintiff's expert testimony on this issue more convincing than that of the defendants' expert. The defendants argue that scanning electron microscopy is irrelevant to the question of continuity because the patent only makes reference to optical microscopy. However, it is somewhat difficult to believe that an optical microscope could detect a discontinuity that could not be detected by a scanning electron microscope that is vastly more powerful. Moreover, even if the court concerns itself solely with optical microscopy, the court finds the plaintiff's expert's testimony that no discontinuities could be observed at 150 times magnification more credible than the defendants' expert's contention that discontinuities could be observed at only ten times magnification.

The defendants also expended a great deal of effort attempting to establish the existence of bubbles on the products in question. Even if there are bubbles, and regardless of whether they are caused by air or by filler material, the court cannot find that their existence would render the backing material or adhesive discontinuous. The court therefore finds that ample credible evidence was presented by the plaintiff to establish that the backing material and adhesive on the alleged infringing products are continuous.

## DISCUSSION

In order for a court to issue a preliminary injunction in a patent infringement action pursuant to 35 U.S.C. § 283, the party seeking the injunction must establish: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships tipping in its favor; and (4) that the issuance of the injunction is in the public interest. *Roper Corporation v. Litton Systems, Inc.,* 757 F.2d 1266, 1269 (Fed.Cir.1985); *Datascope Corporation v. Kontron, Inc.,* 786 F.2d 398, 400 (Fed.Cir. 1986).

■ Likelihood of success on the merits is established if the moving party can show that its patent is valid and is being infringed. *Roper,* 757 F.2d at 1272 n. 5. While the burden is on the party seeking the injunction to establish the four factors set forth above, the burden is on the party challenging the injunction to establish that the patent in question is invalid. 35 U.S.C. § 282 provides in pertinent part:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

Moreover, the burden of proving the invalidity of a reissue patent is even heavier than proving the invalidity of an original patent. *Interconnect Planning Corporation v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir. 1985). A party asserting the invalidity of a reissue patent must do so with clear and convincing evidence. *Id.*

■ The defendants argue that the '887 reissue patent is invalid because its key elements are contained in the plaintiff's Australian patent that was granted in 1953. The court heard brief testimony on this issue, and while it does note some distinct similarities between the Australian patent and '887 reissue patent, it cannot conclude at this time that it has been clearly and convincingly shown that the '887 reissue patent is invalid.

■ The infringement issue is a more difficult one. As discussed earlier, three main points were addressed during the hearing on the question of infringement. The court concludes that the plaintiff has made a reasonable showing of success on the merits on the questions of whether the backing material and adhesive on the alleged infringing products are unaffected by water and are continuous. However, there are too many unanswered questions regarding the reinforcement or lack of reinforcement of the backing material for the court to conclude that the plaintiff has met its burden as to this element.

Additionally, the defendants maintain that they are entitled to avail themselves of the doctrine of intervening rights. This doctrine is derived from 35 U.S.C. § 252, which states:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

No reissued patent shall abridge or affect the right of any person or his successors in business who made, pur-chased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

■ Traditionally, intervening rights has been described as follows:

[I]t comports with equity to hold that a manufacturer, etc., who made and sold articles between the grant of an original patent and broadened reissue patent, which articles were not claimed in the original patent, should be held immune from liability as having acquired intervening rights. (footnote omitted).

*Johnson v. Textron,* 579 F.Supp. 783, 790 (D.R.I.1984), *aff'd,* 758 F.2d 666 (Fed.Cir. 1984). Recently, some courts have applied the doctrine of intervening rights to the narrowing, as well as the broadening, of claims. *Id.; Wayne-Gossard Corporation v. Sondra, Inc.,* 434 F.Supp. 1340, 1352 (E.D.Pa.1977), *aff'd,* 579 F.2d 41 (3d Cir. 1978). For a court to afford a defendant the protection of the equitable doctrine of intervening rights, the claim in question in the reissue patent must not be substantially identical to the claim in the original patent. If it is, the defendant cannot acquire the protection of intervening rights.

The claims in question here, Claim 15 of the '835 patent and Claim 12 of the '887 reissue patent, are indeed very similar. The only notable difference is the inclusion of the term "unreinforced" in the latter. Notwithstanding that the defendants assert that the backing material on their products is in fact reinforced, they also assert that, if it is unreinforced, they are protected by intervening rights. The cornerstone of their assertion is that they have not infringed a repeated original claim since the original claim did not mention "unreinforced."

The plaintiff maintains that the defendants are not protected by intervening rights because they did not exert time and effort to design around the original patent. Furthermore, the plaintiff contends that Claim 12 of the '887 reissue patent is substantially identical to Claim 15 of the '835 patent and that "unreinforced" is only a clarification. While the court finds potential merit in each of the arguments posited by the plaintiff, it finds potential merit in the defendants' position as well. There is not sufficient evidence before the court for a thorough and accurate determination on the issue of intervening rights to be made, and there are still open questions that must be answered until that determination can be made.

The court therefore concludes that, while the plaintiff has taken some significant steps toward proving its ultimate case on the merits, it has not met its burden of showing a reasonable likelihood of success on the merits on all of the questions before the court.

Moreover, even if the court were to assume that the plaintiff has established a reasonable likelihood of success on the merits, the injunction sought could not be granted, because there has been no demonstration of irreparable harm.

During the hearing, the plaintiff put in no evidence on the issue of irreparable harm. Instead, it chose to rely on the strength of its case on the likelihood of success on the merits. "Where validity and infringement have been *clearly* estab-

lished, immediate irreparable harm is presumed." *Roper*, 757 F.2d at 1271 citing *Smith International v. Hughes Tool Company*, 718 F.2d 1573, 1581 (Fed.Cir.1983). Certainly, at least at this point, infringement has not been clearly established in the case *sub judice*. Therefore, the plaintiff is not entitled to the presumption that it will suffer immediate irreparable harm.

Because the court has determined that the first two factors for the issuance of a preliminary injunction have not been established at this time, it need not and will not address the remaining two factors.

Accordingly, for the reasons adduced herein, the plaintiff's motion for a preliminary injunction is denied.

IT IS SO ORDERED.