### NATIONAL PATENT DEVELOPMENT CORPORATION, Appellant

v.

### T.J. SMITH & NEPHEW, LIMITED.

No. 88-7062.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1988.

Decided Jan. 13, 1989.

As Amended Jan. 13, 1989.

C. Frederick Leydig, with whom Jeffrey S. Ward and John P. Bundock, Chicago, Ill., were on the brief, for appellant.

Albert L. Jacobs, Jr., with whom Mark H. Sparrow and Stephen M. Haracz, New York City, were on the brief, for appellee.

Lloyd N. Cutler and A. Stephen Hut, Jr., Washington, D.C., also entered appearances for appellee.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges and

GIBSON,* Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Concurring opinion filed by Circuit Judge RUTH BADER GINSBURG in which Senior Circuit Judge GIBSON joins.

SILBERMAN, Circuit Judge.

Appellant National Patent Development Corporation ("National"), an American company, sued T.J. Smith & Nephew, Limited, a British company, in the district court seeking, *inter alia,* a declaratory judgment that National has a 50% ownership interest in certain patents controlled by Smith & Nephew. National claims that through a series of actions including breach of contract, fraud, and breach of fiduciary duty, Smith & Nephew asserted ownership of an invention that belongs in part to National. Because Smith & Nephew is a foreign company with no agent for service of process in the United States, National alleged that personal jurisdiction over Smith & Nephew was established under 35 U.S.C. § 293 (1982), which gives the district court jurisdiction over a foreign patentee in order "to take any action respecting the patent or rights thereunder." Smith & Nephew moved to dismiss the complaint on several grounds, including lack of personal jurisdiction, contending that section 293 does not extend personal jurisdiction to actions based only on breach of contract, fraud, or breach of fiduciary duty. The district court granted the motion on that ground, and because we believe the district court's decision is consistent with this court's precedent interpreting section 293, we now affirm.

I.

The relationship between National and Smith & Nephew dates back to 1967 when National entered into a series of written agreements with SANACO, a large British corporation, which is the parent corporation of Smith & Nephew. These contracts created a joint venture between National, a small company that held patents relating to hydrophilic polymers, and SANACO, which was in the business of developing surgical and medical dressings. The parties agreed that most discoveries or inventions made by SANACO and Smith & Nephew would be the property of Hydron, the joint-venture company in which each party had a one-half interest. Smith & Nephew was required to keep Hydron (and hence National) informed concerning all work performed under the research program and to disclose fully any discoveries or inventions.

The instant dispute centers on another written agreement between National and SANACO, executed in 1970, by which the parties modified their earlier agreements. The later 1970 contract provided that notwithstanding the earlier agreements, certain adhesive wound dressing applications by Smith & Nephew would be the exclusive property of Smith & Nephew, not of Hydron. National now claims that its entry into the 1970 agreement was procured through Smith & Nephew's fraud and breach of contractual and fiduciary obligations; Smith & Nephew allegedly concealed from National and Hydron the commercial value of the wound dressing applications.

In its suit for declaratory judgment, National relied for subject matter jurisdiction solely on diversity of citizenship, under 28 U.S.C. § 1332 (1982). It asserted personal jurisdiction over Smith & Nephew under section 293, which provides in full:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and sum-

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

mons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the *patent or rights thereunder* that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (emphasis added). Interpreting two prior decisions of this court, the district court held that an action based only on breach of contract, fraud, and breach of fiduciary duty was not a suit "respecting the patent or rights thereunder" within the meaning of section 293, and thus dismissed the complaint.

## II.

The long-arm statute was enacted in 1952 as part of Congress' effort to revise the patent laws and appears in Chapter 29 of the Act (sections 281–294), which is entitled "Remedies for Infringement of Patent, and Other Actions." The sparse legislative history does little to illuminate the meaning of the phrase "action respecting the patent or rights thereunder." Both the House and Senate reports on the bill state merely that "[s]ection 293 is a new section that is needed on some occasions to obtain jurisdiction over foreign patent owners that do not reside in the United States." H.R.Rep. No. 1923, 82d Cong., 2d Sess. 10 (1952); S.Rep. No. 1979, 82d Cong., 2d Sess. 9 (1952). Virtually the only testimony relating to section 293 during the extensive hearings conducted on the bill was from the Department of State, which said that the provision

has been added for the benefit of American residents desiring to bring action against foreign owners of United States patents. At the present time, American manufacturers threatened by charges of infringement of United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment.

Hearings on H.R. 3760 Before the Subcomm. No. 3 of the House Comm. on the Judiciary, 82d Cong., 1st Sess., ser. 9, at 91 (1951).

The first reported case to analyze the reach of section 293 was a decision of the district court in *North Branch Products, Inc. v. Fisher,* 179 F.Supp. 843 (D.D.C. 1960). The American plaintiff had sought a declaratory judgment that certain letters of patent of the United States and certain patent applications were the sole property of the plaintiff. Deciding that the court lacked personal jurisdiction over the Canadian defendant, Judge Holtzoff construed section 293 as "limited to actions under the patent laws, rather than extended to all actions affecting patents generally." *Id.* at 845. Specifically, Judge Holtzoff held that section 293 "should be limited and restricted to actions for infringements of patents and actions for declaratory judgment to adjudicate the validity or infringement of patents." *Id.* at 846. As support for that interpretation, he noted that "the Section is included in the codification of laws relating to patents."[1] *Id.* at 845.

This court first grappled with the scope of the section in *Neidhart v. Neidhart S.A.,* 510 F.2d 760 (D.C.Cir.1975). *Neidhart* actually consisted of two consolidated cases which involved, respectively, the alleged breach of a sublicense agreement covering a patent and of an exclusive territorial use license of a patent. In each case, the plaintiff-appellant contended that its rights under the license agreement were interfered with by the patentee, a foreign company. We held that actions to determine license rights were not "proceedings affecting the patent or rights thereunder," and hence the district court had no personal jurisdiction over the defendants under section 293. Writing for the court, Judge Tamm reasoned that the cases;

while termed patent license agreement controversies, are, quite simply, contract disputes.... The rights of the parties

---

1. The court also felt that its construction would avoid a constitutional question concerning the lack of *subject matter jurisdiction* over the case, since it did not arise under the patent laws or under 28 U.S.C. § 1332, relating to diversity of

citizenship. This concern appears to have been misplaced, however, because in 1960, the district court had the common law and equity jurisdiction of the general trial court in the District of Columbia.

derive solely from the terms of their contracts. Appellants plainly have no rights under the patents; their rights, if any, are only those emanating from the "four corners" of their respective agreements.

*Id.* at 764 (citation omitted). We stated further that "we agree with the rationale of *North Branch* [but] we would not go so far as to say that 28 U.S.C. § 1338(a) [which gives the district courts subject matter jurisdiction over cases arising under the patent laws] and 35 U.S.C. § 293 are synonymous." *Id.* at 764.

In a strong dissenting opinion, Judge Leventhal argued that the scope of section 293 was broad enough to afford a basis for personal jurisdiction in license disputes. He noted that the legislative history of the statute is not explicit, and relied on the disjunctive plain language of the provision —"affecting the patent or rights thereunder"—to reach a broader interpretation. *Id.* at 766–67.

We revisited the statute once more in a different context five years later in *Riker Laboratories, Inc. v. Gist-Brocades N.V.,* 636 F.2d 772 (D.C.Cir.1980). Gist-Brocades, a Netherlands corporation, held a United States patent on certain therapeutic compositions. Gist-Brocades licensed Riker to make, use, and sell the patented compositions, and as part of the agreement Riker was required to develop certain trademarks and to assign those trademarks to Gist-Brocades when the license expired. During the life of the license agreement, unlicensed competitors began to infringe Gist-Brocades' patent and thereby to intrude into Riker's sales. Under the agreement, Riker paid substantial royalties in exchange for its sole right to the patents, and it naturally did not wish to continue such payments if it could not enjoy exclusive use.

Faced with economic losses resulting from the infringements, Riker wanted Gist-Brocades to enforce its patent against the infringers. Riker feared, however, that the trademark tie-in provision of the licensing agreement violated the antitrust laws and that such an illegal term would constitute patent misuse,[2] which would prevent Gist-Brocades from enforcing its patent. In light of this dilemma, Riker cancelled the license agreement, citing the antitrust problems as its reason. Riker sought money damages and a declaratory judgment that it owned the trademarks developed during the life of the license agreement. The alleged basis for personal jurisdiction over Gist-Brocades was section 293.

We held that the district court had both subject matter jurisdiction over the case and personal jurisdiction over Gist-Brocades. Riker's allegation that patent misuse supplied an affirmative cause of action for damages provided subject matter jurisdiction under the antitrust statute, 28 U.S.C. § 1337. *Riker,* 636 F.2d at 780. And section 293 supplied the basis for personal jurisdiction over Gist-Brocades, because Riker's claim went to the issue of whether Gist-Brocades could enforce its patent against infringers. *Id.* at 777. This, we said, clearly affected the "rights" under the patent.

In *Riker,* we took care to explain why *Neidhart* was not controlling precedent. *Neidhart,* we said, involved actions that were "essentially contract disputes, only incidentally involving patents." *Id.* at 778. In contrast, although the genesis of the dispute in *Riker* was a license agreement, the case "embrace[d] the patent laws directly," because it centered on the enforceability of the patent under traditional patent doctrine. *Id.*

### III.

National and Smith & Nephew each interprets our precedent to resolve the case in its favor. National asserts that with our decision in *Riker,* we have "come full circle ... to Judge Leventhal's position in his vigorous dissent in *Neidhart* that the plain language of section 293 affords personal

---

**2.** Patent misuse is an application of the equity doctrine of "unclean hands" in the patent field and serves as a defense for an alleged infringer against a patentee. *See Morton Salt v. G.S. Suppiger Co.,* 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

jurisdiction in a much broader class of cases than those seeking declaratory judgment of invalidity or non-infringement." In National's view, section 293 provides for personal jurisdiction over Smith & Nephew, because "this case involves the fundamental question of whether [National's] ownership rights under the patents as a 50% shareholder in Hydron have been fraudulently misappropriated by Smith & Nephew." Smith & Nephew, on the other hand, views the instant case as no different from the contract disputes in *Neidhart.* It is irrelevant, appellee contends, "whether the contracts involve patent licenses, patent assignments, patent security interests or, as here, patent ownership." In none of those circumstances, it says, does the claim involve "the patent or rights thereunder" within the meaning of section 293.

If this case came to us without circuit precedent, we would find Judge Leventhal's analysis appealing, if not compelling. We note, however, that even under his construction of the statute—relying as it does on the plain language—we would face problems in defining the outer boundary of jurisdiction. How tangential or remote to the core dispute could the patent be and still authorize use of the long-arm statute? Be that as it may, we are not free to write on a judicial *tabula rasa;* we must do our best to interpret and reconcile our own precedent.

█ We think Smith & Nephew (and the district court) clearly offers the better interpretation of the governing cases. National's position requires us, essentially, to conclude that *Riker* overruled *Neidhart,* and that would be to ascribe to the *Riker* panel an assertion of authority that only an *en banc* court may exercise. In *Neidhart,* we explicitly endorsed *North Branch's* rationale suggesting that section 293 is limited to actions brought against foreign patentees involving validity or infringement of patents—in other words, actions that turn

on the resolution of a question of federal patent law. *Neidhart,* 510 F.2d at 764. *Riker,* in turn, justified the use of the long-arm statute because, although the case was brought under the antitrust laws, the core issue was whether the tie-in agreement constituted patent misuse and thus impaired enforceability of the patent under traditional equitable *patent* concepts. We therefore read *Neidhart* and *Riker* together as holding that section 293 is available in a case brought in federal district court, whatever the basis of subject matter jurisdiction, if the complaint shows that the court will be obliged to resolve an issue of patent law.[3] Although we have difficulty visualizing such a case that would not involve the validity or infringement of a patent, we do not think it necessary to foreclose the possibility that such a case exists.

\*　　\*　　\*　　\*　　\*　　\*

█ It is readily apparent that the case before us does not turn on any issue of patent law no matter how broadly defined, and therefore the long-arm statute does not provide a basis for personal jurisdiction over Smith & Nephew. The judgment of the district court is

AFFIRMED.

RUTH BADER GINSBURG, Circuit Judge, joined by Senior Circuit Judge GIBSON, concurring:

I concur in the court's disposition of this case because *Neidhart v. Neidhart S.A.,* 510 F.2d 760 (D.C.Cir.1975), is the controlling precedent and remains the law of this circuit until overruled by the court en banc. I write separately, however, to voice my agreement with Judge Leventhal's interpretation of 35 U.S.C. § 293 (1982), set forth in his dissent in *Neidhart. See* 510 F.2d at 765–68 (Leventhal, J., dissenting).

The district court possessed subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) (1982) (diversity of citizenship):

---

**3.** Smith & Nephew seems to argue that the relevant distinction between *Riker* and *Neidhart* is whether subject matter jurisdiction was established because the suit presented a question of federal law or whether the sole basis for federal jurisdiction was diversity of citizenship. Al-

though we doubt that an inquiry into the basis for federal subject matter jurisdiction is the analytically correct means to determine the scope of section 293, we concede that federal question jurisdiction is present in most cases that turn on an issue of federal patent law.

plaintiff-appellant National Patent Development Corporation (National) is a Delaware corporation with its principal place of business in New York, defendant-appellee T.J. Smith & Nephew, Limited (Smith & Nephew) is an English corporation, and the amount in controversy exceeds $10,000, exclusive of interest and costs.[1]

Furthermore, to the extent that National's claims relate to patents Smith & Nephew registered here, *see infra* note 6, due process would not have inhibited the district court's assertion of personal jurisdiction over defendant-appellee. By registering a patent in the United States Patent Office, a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *cf. Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 203–04 & nn. 4–6 (D.C.Cir.1981).[2] It is therefore fair and reasonable to require such a party to respond here[3] in proceedings, whether arising under federal or state law, concerning the U.S.-registered patent.

The critical question for this court, then, is whether the long-arm statute invoked in this case, section 293, extends to a suit involving patent ownership. Were this court writing on a clean slate, I believe the answer would have to be yes. The words Congress used broadly authorize the dis-

trict court to exercise adjudicatory authority over a patentee not residing in the United States in cases "respecting the patent *or rights thereunder.*" 35 U.S.C. § 293 (emphasis added). This unqualified language is most naturally and plausibly read to encompass a suit over patent ownership.

Despite the recognized natural meaning of the legislature's formulation, *see Neidhart,* 510 F.2d at 764 n. 9; *North Branch Prod., Inc. v. Fisher,* 179 F.Supp. 843, 845 (D.D.C.1960), the court in *Neidhart* read the provision stingily, stating that " '[n]atural meaning' simply will not suffice where, as here, other considerations necessitate more sophisticated interpretation." 510 F.2d at 764 n. 9. I am unconvinced, however, of the reality of any substantial countervailing considerations. I would therefore follow "the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself"; "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *accord Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981); *Diamond v. Diehr,* 450 U.S. 175, 182, 101 S.Ct. 1048, 1054, 67 L.Ed.2d 155 (1981); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).[4]

---

**1.** National's complaint was filed January 14, 1987; for civil actions filed after May 18, 1989, $50,000 replaces $10,000 in the section 1332(a) amount-in-controversy prescription. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 201, 102 Stat. 4642, 4646 (1988).

**2.** As National points out, Brief for Appellant at 2 & n. 1, Smith & Nephew has at least four times availed itself of its rights under United States patent registrations by seeking to enforce its patents against infringers. *See T.J. Smith & Nephew Ltd. v. Ferris Corp.,* No. 86 C 5461 (N.D.Ill. filed July 25, 1986); *T.J. Smith & Nephew Ltd. v. Pfizer Hosp. Prods. Group, Inc.,* No. 85–301 (D.Del. filed May 20, 1985); *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.,* 645 F.Supp. 206 (N.D.N.Y.1986); *T.J. Smith & Nephew Ltd. v. Parke, Davis & Co.,* 623 F.Supp. 808 (D.Utah 1985).

**3.** *I.e.,* in federal court in our nation's capital, the place where the party has registered its patents. *Cf. Riker Laboratories, Inc. v. Gist–Brocades N.V.,* 636 F.2d 772, 776 (D.C.Cir.1980) (District of Columbia is "situs of a United States patent").

**4.** Although the legislative history "do[es] not brilliantly illuminate the Congressional intent," *Riker Labs,* 636 F.2d at 775–76; *see also North Branch Prod., Inc. v. Fisher,* 179 F.Supp. 843, 845 (D.D.C.1960), it is consistent with the statute's broad terms. Commenting on what became section 293, the State Department observed:

The Department understands that this provision has been added for the benefit of American residents desiring to bring action against foreign owners of United States patents. At the present time American manufacturers threatened by charges of infringement of

Our current confined reading of section 293 had its genesis in *North Branch.* The district court there apparently believed that the plaintiff had invoked the section to do double duty, *i.e.,* to satisfy, simultaneously, the requirements of subject matter and personal jurisdiction. The *North Branch* court's analysis, 179 F.2d at 845, confused the two issues, instead of treating them discretely, as Judge Leventhal pointed out in his *Neidhart* dissent, 510 F.2d at 765–66.[5] A similar confusion appears to have influenced the *Neidhart* majority. Reacting to the Justice Department's suggestion that section 293 conferred both subject matter and personal jurisdiction on the district court over patent-related cases, the *Neidhart* majority stressed its resistance to federal court intrusion upon the domain of state courts via assertion of jurisdiction over what was, in essence, a contract dispute. 510 F.2d at 764.

When one separates subject matter jurisdiction from personal jurisdiction, however, the courts' fears appear unjustified. Subject matter jurisdiction is in no case supplied by section 293; it must be based, ordinarily, either on diversity of the parties' citizenship, *see Neidhart,* 510 F.2d at 765 (Leventhal, J., dissenting), or on a federal question, *see Riker Laboratories, Inc. v. Gist–Brocades N.V.,* 636 F.2d 772, 779–80 (D.C.Cir.1980). Interpreting section 293 in accord with its plain meaning, then, would not allow the District Court for the District of Columbia to roam the country pilfering state court fare, because the federal court would be limited by the normal subject matter competence requirements.

In sum, this case properly belongs in federal court.[6] Only misconceived precedent[7] bars the door that Congress appears to have opened. There was good cause for the door-opening: to assure United States citizens the opportunity to air in a United States court complaints against a foreign registrant regarding a United States patent and the rights flowing therefrom. Notwithstanding my reluctance to rehear freshly-decided panel opinions, *see, e.g., Air Line Pilots Ass'n, Int'l v. Eastern Airlines, Inc.,* 863 F.2d 891, 925 (D.C.Cir.1989) (Ruth B. Ginsburg, J., concurring in denial of rehearing en banc), I am convinced that the full circuit, having had ample time for reflection and running no risk of undermining the court's collegiality, should reverse the course set by *Neidhart.*

United States patents by persons resident abroad are especially handicapped by inability to bring suit for declaratory judgment. Hearings on H.R. 3760 Before the Subcomm. No. 3 of the House Comm. on the Judiciary, 82d Cong., 1st Sess. 91 (1951); *see also id.* at 93 (similar statement by Justice Department spokesperson). As Judge Leventhal reasoned, this statement indicates that although "American manufacturers threatened with charges of infringement are identified as being 'especially handicapped' by present lack of service capability, ... they were not the sole beneficiaries of the legislation." *Neidhart,* 510 F.2d at 767 (Leventhal, J., dissenting).

5. While there was no federal question claim in *North Branch,* and diversity of citizenship was imperfectly pleaded, 179 F.2d at 845, the court did have subject matter jurisdiction: in those pre–District of Columbia Court Reorganization Act days, the district court served as a general trial court for the District of Columbia, and so had common law and equity jurisdiction much like that of a state court of general jurisdiction.

*See Neidhart,* 510 F.2d at 767 n. 11 (Leventhal, J., dissenting).

6. More specifically, only the case described in appellant's and appellee's briefs—limited to National's dispute with Smith & Nephew over the ownership of United States reissue patents—properly belongs in the district court. National's complaint, which alleges that Smith & Nephew also misappropriated National's rights in the relevant inventions by filing patent applications in Great Britain and eighteen other countries of the world, *see* Joint Appendix at 18–19, 24–25, would have to be trimmed so that the issues before the district court concern only the U.S. patents or rights thereunder.

7. Only one circuit judge until now has squarely rejected the application of section 293 to a case that did not turn on an issue of patent law. The majority in *Neidhart* consisted of Circuit Judge Tamm and George L. Hart, Jr., United States District Judge for the District of Columbia, and *North Branch* was decided by District Judge Holtzoff.