**PURDUE RESEARCH FOUNDATION,**
Plaintiff,

v.

**SANOFI–SYNTHELABO,**
**S.A., Defendant.**

**No. CIV.A. 03–1924(PLF).**

United States District Court,
District of Columbia.

Aug. 10, 2004.

Patrick Kavanaugh, Hamilton & Hamilton, LLP, Washington, DC, for Plaintiff.

Edward T. Colbert, Kenyon & Kenyon, Washington, DC, for Defendant.

### OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure. In its complaint, plaintiff Purdue Research Foundation ("PRF") alleges that Sanofi–Synthelabo, S.A. ("SSBO France") breached contracts with plaintiff by failing to make payments in connection with Cooperative Research Agreements between plaintiff and defendant's predecessors-in-interest. Plaintiff's complaint asserts that the Court has personal jurisdiction over defendant under the federal patent long-arm statute, 35 U.S.C. § 293. Defendant seeks dismissal of the complaint for lack of personal jurisdiction on the ground that the case is not one "respecting the patent or rights thereunder" and therefore is outside the scope of 35 U.S.C. § 293. The Court will grant defendant's motion to dismiss for lack of personal jurisdiction.

## I. BACKGROUND

### A. Facts

From 1987 to 1992, plaintiff entered into three Cooperative Research Agreements with Sterling Drug, Inc. ("Sterling Drug") and its successors-in-interest for the purpose of developing certain antiviral drugs. *See* Complaint, Exhibits 3–5 ("1987 Cooperative Research Agreement," "1990 Cooperative Research Agreement," "1992 Cooperative Research Agreement").[1] The 1987 Agreement stated that Purdue scientists had been cooperating with Sterling Drug scientists since January 1, 1986, and that their research had led to "increased understanding of the interactions of rhinovirus and other picornaviruses with certain antiviral agents invented at Sterling Drug." 1987 Agreement at 2. The Agreement called for a continuation of the cooperation between Purdue scientists and Sterling Drug in order to further the development of antiviral agents of interest to Sterling Drug. *See id.* at 3. The Agreement obligated Sterling Drug to compensate plaintiff for product achievements made related to the sponsored research. *See id.*[2]

During the period covered by these agreements, the parties collaborated on research could lead to four types of product achievements: (1) joint inventions; (2) inventions made solely by Sterling Drug personnel; (3) inventions made solely by Purdue University personnel; and (4) inventions made jointly with third parties. *See* 1987 Agreement ¶ 7. Although it is unclear from the filings in this suit which category is at issue, the Seventh Circuit concluded that it was the second category that was at issue in the parties' dispute. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d at 776 n. 4. The second category states that an invention that is "conceived or first actually reduced to practice in the course of work under this Agreement," and which, "under United States law, is an invention solely of Sterling personnel, shall be owned by Sterling alone." *Id.* (citing 1987 Agreement ¶ 7.2(b)). With respect to any such invention, the parties agreed to "negotiate in good faith to determine a percentage that Sterling will pay PRF based on net sales of any product, the manufacture, use or sale of which would infringe the patent application covering one or more aspects of the invention if the patent or appli-

1. The three agreements contain the same provisions relevant to this case and the parties make no effort to distinguish the 1987 Agreement from the later contracts. *See* Sanofi–Synthelabo's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction ("Def.Mem.") at 2 n. 1. For convenience, the Court therefore refers only to the 1987 Agreement.

2. Plaintiff initially filed a breach of contract action in Indiana state court alleging that defendant failed to perform its obligations under this Agreement. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 775 (7th Cir.2003). The case was removed to the United States District Court for the Northern District of Indiana, which dismissed the case for lack of personal jurisdiction. *See id.* at 775–76. The United States Court of Appeals for the Seventh Circuit affirmed that decision. *See id.* at 789. Plaintiff and defendant agree that the history of this dispute was summarized accurately by the Seventh Circuit.

The 1987 Agreement (and subsequent agreements) recognized that the collaborative

the development of an anti-viral compound known as pleconaril. *See* Sanofi–Synthelabo's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction ("Def.Mem.") at 3. In 1994 and 1995, Sterling Winthrop, Inc., a successor to Sterling Drug, was awarded patents covering pleconaril. *See id.* In 1994, Sanofi, S.A., a French corporation, purchased intellectual property relating to Sterling Winthrop's ethical pharmaceutical business, thus giving Sanofi, S.A. title to intellectual property related to pleconaril and other products. *See id.* In 1999, Sanofi, S.A. merged with Synthelabo, S.A., a French corporation, thereby forming SSBO France, the defendant. *See id.*

In 2001, SSBO France granted ViroPharma, Inc., a Delaware corporation with its principal place of business in Pennsylvania, an exclusive royalty-bearing license to develop, market, and sell pleconaril-containing products in the United States and Canada. *See* Def. Mem. at 3. Plaintiff contends that the license, intellectual property rights, and other considerations constitute commercial benefits covered by the Agreements, and that plaintiff is "entitled to payment in connection with any and all such commercial benefits." Complaint ¶ 13. Plaintiff also seeks declaratory relief in the form of a "declaration of the Court regarding Sanofi's prospective obligations to PRF under [the] agreements." *Id.* ¶ 19.

### B. Procedural History

On December 20, 2001, plaintiff filed an action for breach of contract in the Superior Court for Tippecanoe County, Indiana. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 779 (7th Cir.2003). Plaintiff alleged that, in connection with the development of pleconaril, defendant owed payments to plaintiff under plaintiff's agreement with Sterling

Drug, defendant's predecessor-in-interest. *See id.* On January 22, 2002, defendant removed the case to the United States District Court for the Northern District of Indiana. *See id.; see also Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 206 F.Supp.2d 958 (N.D.Ind.2002). On February 14, 2002, defendant filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d at 779. On June 5, 2002, after the parties had conducted limited discovery relating to the jurisdictional issue, the district court dismissed plaintiff's complaint for lack of personal jurisdiction. *See id.*

Plaintiff appealed the district court's decision to the United States Court of Appeals for the Seventh Circuit. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d at 779. The Seventh Circuit affirmed the district court's decision that defendant was not subject to personal jurisdiction in Indiana on the basis of either specific or general jurisdiction. *See id.* at 780–89.

On September 16, 2003, plaintiff filed with this Court a breach of contract action alleging that plaintiff was "entitled to payment in connection with any and all ... commercial benefits" accruing from plaintiff's licensing agreement with ViroPharma, Inc., as well as plaintiff's intellectual property rights and other considerations related to pleconaril. Complaint ¶ 13. Plaintiff alleged that defendant "and/or its predecessors in interest have breached their obligations to PRF under the Cooperative Research Agreements ... and caused damage to PRF by failing to perform payment obligations thereunder to PRF." *Id.* ¶ 17. On December 22, 2003, defendant filed a motion to dismiss for lack

cation were not owned by Sterling." *Id.* (cit-

ing 1987 Agreement ¶ 9.1).

of personal jurisdiction, alleging that the Court does not have personal jurisdiction over defendant under either the District of Columbia long-arm statute, D.C.Code § 13–423, or the federal patent long-arm statute, 35 U.S.C. § 293.

## II. DISCUSSION

In its opposition to defendant's motion to dismiss, plaintiff concedes that this Court may not exercise personal jurisdiction over defendant under the District of Columbia long-arm statute, but argues that personal jurisdiction is appropriate under the federal patent long-arm statute. *See* Purdue Research Foundation's Opposition to Sanofi–Synthelabo's Motion to Dismiss For Lack of Personal Jurisdiction ("Pl.Opp.") at 3. In evaluating defendant's motion to dismiss, the Court therefore will focus its analysis on the applicability of 35 U.S.C. § 293.

### A. *Rule 12(b)(2) Standard of Review*

Plaintiff bears the burden of establishing personal jurisdiction over defendant. In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations. *See GTE New Media Services, Inc. v. Ameritech Corp.,* 21 F.Supp.2d 27, 36 (D.D.C.1998), *remanded on other grounds sub nom, GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.Cir.2000); *COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. 515, 520 (D.D.C.1995). When considering personal jurisdiction, the Court need not treat all of plaintiff's allegations as true. Instead, the Court "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000); *see also Capital Bank International, Ltd. v. Citigroup, Inc.,* 276 F.Supp.2d 72, 74 (D.D.C.2003); *Novak–Canzeri v. Al*

*Saud,* 864 F.Supp. 203, 206 (D.D.C.1994) ("the Court must accept Plaintiff's claims as true in ruling on a Rule 12(b)(2) motion, unless they are directly contradicted by an affidavit").

### B. *The Federal Patent Long–Arm Statute*

#### 1. Case Law Construing 35 U.S.C. § 293

The federal patent long-arm statute confers on the United States District Court for the District of Columbia personal jurisdiction over patentees who do not reside in the United States if the foreign patentee fails to designate in writing a person in the United States for receipt of process, or if that person cannot be found, *and* the claims at issue in the case respect the foreign patentee's patent or rights thereunder. *See* 35 U.S.C. § 293. The statute reads:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the District of Columbia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs. The court shall have the same jurisdiction to take *any action respecting the patent or rights thereunder* that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (emphasis added). The only issue before the Court on this motion is whether plaintiff's claim for breach of contract and declaratory relief is an "ac-

tion respecting the patent or rights thereunder" such that the Court may assert personal jurisdiction over the defendant. *Id.* The Court concludes that it is not.

Since Congress enacted Section 293 in 1952, the United States Court of Appeals for the District of Columbia Circuit and this Court have addressed the extent of personal jurisdiction accorded by Section 293 in only five reported decisions. First, in *North Branch Products, Inc. v. Fisher,* 179 F.Supp. 843 (D.D.C.1960), Judge Holtzoff held that the statutory phrase "proceedings affecting the patent or rights thereunder" in Section 293 "should be construed as synonymous with 'actions under the patent laws of the United States' [*i.e.,* actions within the scope of 28 U.S.C. 1338(a) ] and, therefore, should be limited and restricted to actions for infringement of patents and actions for declaratory judgments to adjudicate the validity or infringement of patents." *Id.* at 845–46. It should not be extended, he concluded, "to all actions affecting patents generally." *Id.* at 845.

In *Neidhart v. Neidhart S.A.,* 510 F.2d 760 (D.C.Cir.1975), the court of appeals essentially endorsed Judge Holtzoff's view in *North Branch* and held that Section 293 jurisdiction was limited to suits concerning the validity or infringement of patents. *See id.* at 763. Jurisdiction did not extend to a dispute alleging breach of a sublicensing agreement between a United States plaintiff and a Swiss patentee-defendant. *See id.* at 764–65. In his dissent, Judge Leventhal maintained that Section 293 should be construed more broadly to confer personal jurisdiction over licensing disputes on the ground that the phrasing of Section 293 "is in the disjunctive—including not only proceedings affecting the patent but proceedings affecting rights under the patent." *Id.* at 766 (Leventhal, J.,

dissenting). To Judge Leventhal, "[t]he natural meaning of the words used conveys, to me, the thought that a proceeding to determine, *e.g.,* the extent of rights granted by an exclusive license granted by the patentee, or the validity of the license, is a 'proceeding affecting rights under the patent.'" *Id.*

In *Riker Laboratories, Inc. v. Gist–Brocades N.V.,* 636 F.2d 772 (D.C.Cir.1980), the court of appeals held that a Netherlands patentee was subject to personal jurisdiction under Section 293 in a case in which a United States plaintiff alleged that the provisions in the defendant's licensing agreement constituted patent misuse. *See id.* at 778. The court distinguished *Neidhart* by noting that the actions in *Neidhart* were "essentially contract disputes, only incidentally involving patents," while the heart of the issue in *Riker* "[did] not involve mere license terms but the effect under the antitrust laws of the terms of the patent license on rights under the patent." *Id.* at 778–79.

The most recent court of appeals decision interpreting the scope of Section 293, *National Patent Development Corp. v. T.J. Smith & Nephew, Ltd.,* 877 F.2d 1003 (D.C.Cir.1989), an *en banc* decision of the court, rejected the narrow construction espoused by the court in *Neidhart* and endorsed Judge Leventhal's dissent. *See id.* at 1007 ("We conclude that this court embarked on the wrong course in *Neidhart,* and that Judge Leventhal's dissent in that case correctly construes section 293."). The court of appeals therefore held that a suit by a United States plaintiff against a British patentee-defendant contesting the defendant's ownership of a patent was within the scope of Section 293. *See id.* at 1008–10 ("A suit over patent ownership surely respects or affects rights under a

patent.").[3] The court emphasized that "[b]y registering a patent in the United States Patent and Trademark Office, a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords." *Id.* at 1009. It therefore was "fair and reasonable to require such a party to respond here—*i.e.*, in federal court in our nation's capital, where the party has registered its patents—in proceedings, whether arising under federal or state law, concerning the U.S.-registered patent." *Id.* at 1009–10. Importantly, however, the court of appeals made clear that its specific holding was limited to suits regarding patent ownership. *See id.* at 1010 ("Today we decide only that a suit over patent ownership falls comfortably within [the] boundaries" of the language in section 293 conferring on the court jurisdiction over an "action respecting the patent or rights thereunder.").

This Court most recently considered the scope of Section 293 in *Park v. Arnott*, Civil Action No. 89–3257, 1991 WL 220288 (D.D.C. Oct. 17, 1991). In *Park*, the United States plaintiff sued the defendant, a Swiss corporation, for breach of contract and other causes of action for allegedly failing to make royalty payments to the plaintiff pursuant to a contract in which the defendant was the successor-in-interest. *See id.* at *1. The plaintiff also alleged that the defendant obtained a patent

based on the plaintiff's concepts. *See id.* at *3. Without citing or discussing the D.C. Circuit's opinion in *National Patent*, Judge Lamberth held that the action "[did] not involve a patent or rights thereunder" because "this case turns upon plaintiff's allegations of breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, unjust enrichment and declaratory relief." *Id.* Accordingly, he explained, the case was analogous to *Neidhart* in that it "only incidentally involves patents and rights thereunder" and the plaintiff therefore could not establish that the court had personal jurisdiction over the defendant under Section 293. *See id.* at *3–4.

### 2. Application of Case Law to Plaintiff's Claims

■ In support of its contention that this Court has personal jurisdiction over defendant in this case, plaintiff argues that *National Patent* and the court of appeals' endorsement of the *Neidhart* dissent require the Court to exercise personal jurisdiction over defendant under Section 293. *See* Pl. Opp. at 6 ("*National Patent* and Judge Leventhal's analysis in *Niedhart* [sic] are controlling in this case."). In making this argument, plaintiff asserts that, despite the absence in its complaint of any assertion that this case involves a dispute regarding patent ownership or pat-

---

**3.** The court of appeals rejected what it speculated may have been the "prime consideration" motivating the *Neidhart* majority—"its fear that a less restrictive reading of section 293 would 'abrogate the traditional separation of state court-federal court jurisdiction whenever a nonresident patentee is involved.'" *National Patent Development Corp. v. T.J. Smith & Nephew, Ltd.*, 877 F.2d at 1008–09 (quoting *Neidhart v. Neidhart S.A.*, 510 F.2d at 764). The court explained that the *Neidhart* majority's concern was "misplaced," and that it inadvisably relied on a confused analysis by the court in *North Branch*, which wrongly intertwined personal

and subject matter jurisdiction when analyzing Section 293. *See id.* at 1009. According to the court of appeals in *National Patent*, "[w]hen one addresses subject matter and personal jurisdiction separately ... the *Neidhart* and *North Branch* courts' concern largely vanishes" because the district court possessed subject matter jurisdiction based on diversity of citizenship and the requisite amount in controversy and because, "to the extent that National's claims relate to patents ... registered in the United States, due process would not have inhibited the district court's assertion of personal jurisdiction." *Id.*

ent misuse, the dispute is within the scope of Section 293 because "the disputed provisions of the parties' contracts specifically relate to PRF's contribution to patented inventions" and because "Sanofi has expressly invoked the inventorship and claim provisions of its patents as justification for its refusal to perform the disputed contract terms." *Id.* at 6–7. Plaintiff further contends that defendant's reference to patented inventions in its filing means that "Sanofi acknowledges that this case concerns, among other things, a beneficial interest of PRF in the commercial proceeds of patented inventions to which Purdue researchers made a contribution." *Id.* at 7. Plaintiff concludes that, under the broadened interpretation of Section 293 articulated by Judge Leventhal dissenting in *Neidhart* and adopted by the D.C. Circuit in *National Patent,* this dispute respects the patents of defendant or the rights thereunder and that personal jurisdiction over defendant therefore is proper. *See id.* at 9.

The Court disagrees. Plaintiff has not demonstrated that even *National Patent 's* interpretation of Section 293 is broad enough to confer personal jurisdiction over defendant. The holding of *National Patent* was expressly limited to disputes over patent ownership. *See National Patent Development Corp. v. T.J. Smith & Nephew, Ltd.,* 877 F.2d at 1010 (dispute over patent ownership "falls comfortably within [the] boundaries" of statutory term "action respecting the patent or rights thereunder"). As plaintiff's complaint makes clear, this action, by contrast, is a contract dispute. Patent ownership is not at issue in this case. Defendant's predecessor obtained patents to pleconaril in 1994 and 1995, and nowhere in plaintiff's filings does plaintiff assert that it is entitled to an ownership interest in those patents.

Moreover, because the subject matter of this dispute is distinguishable from the facts addressed by Judge Leventhal's dissent in *Neidhart,* the court of appeals' subsequent adoption of Judge Leventhal's reasoning does not authorize the Court to exercise personal jurisdiction over defendant here. Judge Leventhal in *Neidhart* stated that Section 293 jurisdiction is appropriate in a dispute between a patent licensee and sublicensee, *i.e.,* an "action[ ] to determine license rights." *Neidhart v. Neidhart S.A.,* 510 F.2d at 763. He explained that a foreign patentee-defendant should be subject to the Court's jurisdiction under Section 293 because "the extent of rights granted by an exclusive license granted by the patentee, or the validity of the license, is a 'proceeding affecting rights under the patent.'" *Id.* at 767.

While undeniably a broader interpretation of Section 293 than otherwise articulated by the court of appeals, the language of Judge Leventhal's dissent in *Neidhart* does not describe the dispute presently before the Court. Plaintiff has not asked the Court to evaluate "the extent of rights granted by an exclusive license" or the "validity of the license" granted by defendant, but instead alleges that defendant breached its "obligations to PRF under the *Cooperative Research Agreements,*" and asks the Court to issue a "declaration … regarding Sanofi's prospective obligations to PRF under *those agreements.*" Complaint ¶ ¶ 17, 19 (emphasis added). In other words, to resolve this dispute, the Court's central inquiry would be the extent of rights and obligations of defendant under its *contracts* with plaintiff. This case therefore is analogous to the situation before Judge Lamberth in *Park v. Arnott,* because this case "turns on the plaintiff's allegations of breach of contract … and declaratory relief" relating to the contracts, and is "only incidentally related to

patents and rights thereunder." *Park v. Arnott,* 1991 WL 220288, at *3.

Plaintiff's contention that Section 293 applies because "Sanofi has expressly invoked the inventorship and claim provisions of its patents as justification for its refusal to perform the disputed contract terms" has little force. Pl. Opp. at 7. Mere reference to provisions contained in defendant's patents does not transform what is essentially a contract dispute into a dispute affecting the rights under defendant's patents. Significantly, plaintiff does not challenge the validity of defendant's ownership of the patents to pleconaril, nor does it allege that defendant did not have the right to benefit commercially from the patents by entering into a license agreement with ViroPharma, Inc. Plaintiff's contention is that, pursuant to its contracts, it is entitled to a share of the proceeds defendant enjoys as a result of the research performed jointly by plaintiff and defendant. *See* Complaint ¶ 13 ("Pursuant to the Cooperative Research Agreements, PRF is entitled to payment in connection with any and all such commercial benefits."). That situation is distinguishable from that in *Neidhart,* where the plaintiff claimed it was owed payments pursuant to a licensing agreement with the defendant-patentee. *See Neidhart v. Neidhart, S.A.,* 510 F.2d at 761. Accordingly, *National Patent* and its adoption of the *Neidhart* dissent, while indeed "controlling" in this Court, do not authorize the Court to exercise personal jurisdiction over defendant in this very different kind of dispute.

Plaintiff also argues that the policy underlying Section 293 should compel the Court to exercise personal jurisdiction over defendant. Plaintiff asserts that the dispute before the Court "exemplifies why Section 293 was enacted and why the *National Patent* court interpreted Section 293

broadly." Pl. Opp. at 6. Plaintiff argues that Section 293

was intended to cope with the problem that nonresidents could obtain valuable United States patent rights, and yet stay beyond the reach of both state and Federal process as long as they were not present or "doing business" within the United States. Congress sought to assure Americans a forum in the United States for proceedings "affecting the patent or rights thereunder."

*Id.* (quoting *Neidhart v. Neidhart, S.A.,* 510 F.2d at 766 (Leventhal, J., dissenting)). Plaintiff argues that Section 293 must apply to defendant because defendant is attempting to "duck the personal jurisdiction of United States courts altogether." *Id.*

Even accepting plaintiff's interpretation of the congressional intent underlying Section 293, the instant matter is not one contemplated by the statute. As already discussed, the Court may exercise personal jurisdiction only if the dispute may be characterized as "respecting [the nonresident's] patent or rights thereunder." 35 U.S.C. § 293. The bare fact that defendant is a nonresident patent owner does not authorize the Court to assert personal jurisdiction over defendant under Section 293 for all matters. Moreover, plaintiff's contention that defendant is attempting to "duck" jurisdiction in United States courts, even if true, does not relieve plaintiff of its burden to establish personal jurisdiction over defendant. *See GTE New Media Services, Inc. v. Ameritech Corp.,* 21 F.Supp.2d at 36; *COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. at 520. To make such a showing, plaintiff must establish that the present dispute respects defendant's patents or the rights thereunder and, as already discussed, it has failed to do so. Accordingly, the Court will grant defendant's motion to dismiss

under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

*FINAL ORDER AND JUDGMENT*

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's Motion to Dismiss for Lack of Personal Jurisdiction [2] is GRANTED; it is

FURTHER ORDERED that this case is dismissed without prejudice from the docket of this Court. This is a final appealable order. *See* FED. R. APP. P. 4(a).

SO ORDERED.